THE CITY OF HASTINGS, PLAINTIFF IN ERROR, v. WILLIAM B. THORNE, DEFENDANT IN ERROR.

1. **License Moneys:** WHERE THEY BELONG. Under Sec. 5, Art. VIII of the Constitution of 1875, all moneys arising from licenses granted in cities of the second class for the sale of malt, spirituous, and vinous liquors, belong exclusively to the common school fund of the cities respectively in which they are collected.

City of Hastings v. Thorne.

2. ————: CONSTITUTIONAL LAW. The act of the legislature, entitled "An act to legalize the collecting or receiving and expending moneys collected or received by virtue of any levy made by any city of the second class, or incorporated town, upon dram shops, liquor dealers, or saloons, for a license tax, or a license for the sale of malt, spirituous, or vinous liquors, or intoxicating drink, in cities of the second class, or incorporated towns," [Laws 1877, p. 171], being repugnant to Sec. 5, Art. VIII of the Constitution, is void.

ERROR from the district court for Adams county.

*Ash & Scofield*, for plaintiff in error.

LAKE, J.

This record shows that a great deal of illegal testimony was admitted on the trial against objection, duly made by the plaintiff in error. Of what this consisted will be apparent from what we shall hereafter say, without now particularizing.

The action in the court below was brought by the defendant in error to recover from the plaintiff in error certain moneys alleged to have been received on account of licenses issued by the corporate authorities for the sale of malt, spirituous, and vinous liquors, within the city of Hastings. The claim to a recovery of these moneys was based upon the *third* clause of sec. 572 of the Criminal Code, and the former decisions of this court, to the effect that all such moneys belonged to the common school fund of the particular county in which they were collected, of which the county treasurer is the lawful custodian. *City of Tecumseh v. Phillips*, 5 Neb., 305. *The State, ex rel. Noonan, v. The Mayor, etc., of Lincoln*, 6 Neb., 12.

We have already decided during this term of the court in the case of the *State, ex rel. Helmer, v. McConnel, ante* page 28, that under the operation of Sec.

13

5, Art. VIII of our new constitution, this rule is no longer operative, and that all moneys arising from this source since that instrument took effect, belong exclusively to the common school fund of the cities, respectively, in which they are collected. This decision does not depend upon legislative action for its support, but rests upon the fundamental law, beyond which it is unnecessary to look for guidance. This being so it is apparent that the claim for moneys received by the city for licenses, issued after the first day of November, 1875, the day on which the constitution went into operation, is unfounded, and that all of the testimony in respect thereto was wholly immaterial, and ought to have been excluded.

But with this constitutional rule in view how stands the case? Of all the moneys sued for, the evidence very clearly shows—in fact it is undisputed—that there was collected prior to the first day of November, 1875, only the sum of $367.50. Now whatever we may hold as to the effect of the act of the legislature, "Approved, February 19, 1877," purporting to legalize the use and expenditure of these moneys by cities of the second class, this sum was all that the county treasurer was entitled to receive. All that was collected after that date belonged exclusively to the city for the support of its own public schools.

But the testimony further shows—and of this there is no dispute—that before the bringing of the suit there was paid to the county treasurer on account of the license moneys collected by the city of Hastings, the aggregate of $550.00, or $173.50 more than he was entitled to. The finding of the court below therefore ought to have been in favor of the city, and not being so, was clearly against the evidence and the law of the case.

As we have already shown, the constitution, Sec. 5,

Art. VIII, of its own force, determines the use to which such moneys shall be devoted. With this provision of the organic law in view, can the act of the legislature of February 19th, 1877, Laws 1877, p. 171, by which it is contended that the use of these moneys by the city of Hastings was legalized, be sustained? The first section provides: "That in all cases in which cities of the second class, or incorporated towns, have collected or received, and expended for the use and benefit of such cities or towns, either in works of internal improvement, school purposes or otherwise, moneys collected or received as a levy for a license tax levied or required to be paid by said cities or towns as a license tax levied on dram shops, saloons, or liquor dealers, for the sale of malt, spirituous, and vinous liquors, or any intoxicating drink, such expenditures are hereby declared to be legal and valid, and the same is hereby ratified and confirmed, and such cities or towns are hereby released and discharged from any and all liability whatsoever by reason of having so collected or received and expended said moneys as aforesaid; hereby including all money so collected, received, and expended by the said cities or towns in internal improvements or otherwise for the benefit of said cities or towns."

The scope and evident effect of this section, if it be operative, are, to validate any previous disposition of such license moneys, if made for the benefit of such city or town, no matter what it might have been, while the only disposition permitted by the constitution is, "*to the support of common schools*," within the particular municipal subdivision in which the money is raised. Had the legislature the power to do this? Most clearly not. That body can legalize no act which they could not have authorized before it was done. In other words, they cannot validate that which the constitution either in express terms or by necessary impli-

cation prohibits. Cooley's Constitutional Limitation, 381. *May v. Holdridge*, 23 Wis., 93. *Hepburn v. Curts*, 7 Watts, 300.

Such being the character of this legislation, there can be no doubt whatever of its repugnance to the constitution, and it becomes our duty, therefore, to pronounce it a void act.

The judgment must be reversed, and the cause remanded to the court below for a new trial.

REVERSED AND REMANDED.