ENOCH BRADSHAW, PLAINTIFF IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Bill of Exceptions:** AFFIDAVITS. Affidavits filed as evidence in the district court must be certified to the supreme court by a proper bill of exceptions, and be thus made a part of the record, or they cannot be considered.

2. **Juror:** CONVICTIONS ON SUBJECT OF CAPITAL PUNISHMENT. If a juror, on his *voir dire* examination in a case depending upon circumstantial evidence, answer that his convictions are such as would preclude him from returning a verdict of guilty where the punishment would be death, it is good ground of challenge for cause on the part of the state. *St. Louis v. State*, 8 Neb., 405.

3. **Assistant to District Attorney.** The district attorney, in a criminal trial, may have the assistance of counsel employed on private account. *Polin v. State*, 14 Neb., 540.

4. **Attorney:** ARGUMENT: REVIEWING CONDUCT ON ERROR. Where it is alleged that an attorney, in the argument of a cause on trial to a jury, made misstatements of the evidence and went outside of the record in his statements of the facts proved on the trial, the attention of the court should be called to the language and conduct of the attorney by the proper objection, and a ruling had thereon by the court. If the objection is overruled and an exception taken the question may be reviewed in the supreme court upon the language, objection, ruling, and exception being made a part of the record by the proper bill of exceptions, but not otherwise.

5. **Instructions.** Instructions to a jury must be applicable to the

testimony introduced upon the trial.    It is not error to refuse to instruct upon a point of law which does not arise in the case, and which would have no reference to any of the evidence.

6.    ———: It is not error on the part of the court to refuse to give an instruction when the same has, in substance, been already given.

7.    Criminal Law: EVIDENCE: REASONABLE DOUBT.    In cases. of circumstantial evidence it is necessary that all the necessary facts and circumstances essential to the conclusion be proved beyond a reasonable doubt, but it is not necessary that each link in the evidence "relied upon" should be proven beyond a reasonable doubt.    Such facts if not proven should be discarded by the jury.

8.    ———: ———: The evidence in the case examined and found sufficient to sustain the verdict of the jury.

ERROR to the district court for Gage county.    Tried below before DAVIDSON, J.

*L. W. Colby* (*Hazlett & Bates* with him), for plaintiff in error.

*William Leese, Attorney General*, for the State.

REESE, J.

The plaintiff in error was indicted by the grand jury of Gage county for the murder of Henry C. Voorhees.    Upon trial he was found guilty of murder in the second degree, and was sentenced to the penitentiary for life.    He alleges error, and seeks to reverse the judgment of the district court.    The questions presented by his brief and the record will be noticed in the order in which they are presented.

Complaint is made of the decision of the district court in overruling a motion made by plaintiff in error for a change of the place of trial.    The motion is based upon the alleged bias and prejudice of the citizens of the county in which the cause was pending, to such an extent that a

fair and impartial trial could not be had in that county. We find quite a number of affidavits attached to the record which seem to have been taken upon the issue presented by this motion, and if they were all presented to the trial court there is no error in its ruling, for we think there was sufficient to warrant it in finding that such bias and prejudice did not exist. But these affidavits are in no way certified to by the court, are not embodied in any bill of exceptions, and, as has been repeatedly held by this court, cannot be here considered. If it is desired to review the decision of a district court upon any question of fact, the proof submitted to that court must be preserved by a proper bill of exceptions. Affidavits come directly within this rule, and must be preserved by bill of exceptions and made a part of the record in order to be considered. *Tessier v. Crowley*, 16 Neb., 369, and cases there cited.

The foregoing observations will also apply to the second point of error assigned, which is, that the district court erred in overruling the motion of plaintiff in error for a continuance. We observe an "explanation" following the motion, and which was doubtless intended for the clerk to sign, to the effect that the affidavits referred to by the motion "are copied and appear next before said motion;" but the clerk's signature does not appear. It is not signed. But this would not have been sufficient. All such affidavits must be incorporated into the record by a bill of exceptions. The mere certificate of the clerk is not enough.

Complaint is made of the rulings of the district court in sustaining and overruling challenges made to jurors while impaneling the trial jury. We have read that part of the record, and find that four challenges to jurors, for cause, made by the state were sustained, and to which plaintiff in error excepted. Mr. Deny was called as a juror. In answer to questions propounded by the district attorney, he stated that he had conscientious scruples against the death penalty in case of murder, and that he did not believe in

inflicting such penalty. The court then asked him if his opinions were such as would preclude his bringing in a verdict of guilty where the prisoner was charged with an offense the penalty of which was death. His answer was, "Well, I should be opposed to bringing in a verdict of that kind because I am opposed to the death penalty."

Mr. Mundel was called as a juror, and in answer to the question of the district attorney stated that he had conscientious convictions upon the subject of the infliction of the death penalty; that he did not believe in it in any case. The court then asked him the following question: "Are your opinions such as to preclude you from bringing in a verdict of guilty where the defendant was charged with an offense the penalty of which was death?" The juror answered frankly, "Yes, sir."

J. E. Bryant was called and interrogated by the district attorney. He stated unequivocally that he was not in favor of inflicting the death penalty. The court then propounded to him this question: "Are your opinions such as preclude your bringing in a verdict of guilty in a case where the defendant is charged with an offense the penalty of which is death?" Answer, "They are."

Mr. Bartley, on being examined as to his qualifications, stated that if the evidence was positive and direct he would have no such opinions as would prevent him from returning a verdict of guilty, but that in a case of circumstantial evidence he would not do it. At the close of his examination, when asked by the court whether he could or could not, he answered as follows: "That I could not in circumstantial evidence convict a man of murder in the first degree."

These jurors were challenged for cause by the district attorney, and the challenge being sustained by the court they were excused. In this there was no error. The law prescribes but one punishment for murder in the first degree, and that is death. If a person is called to act as a

juror, who states in the outset that he so thoroughly abhors that mode of punishment that he would not in any case assent to its administration, it would be a mockery to retain him on the jury.   If he believes it to be essentially wrong to inflict the penalty, he of course could not assent to it.   The same may be said as to the juror who would not convict upon circumstantial evidence.   The questions here presented have already been passed upon by this court in *St. Louis v. The State*, 8 Neb., 405.

It is next urged that the court erred in permitting W. H. Ashby, an attorney of the Gage county bar, to assist the district attorney in the prosecution of plaintiff in error. The record shows that before any evidence was introduced the district attorney stated to the court that he desired the assistance of Mr. Ashby in the trial of the cause on account of the magnitude of the case, that he had before that time requested his aid, etc.   Plaintiff in error objected by his counsel, and stated that the attorney was not a disinterested attorney, and was employed by the friends of the deceased. The court overruled the objection, and allowed Mr. Ashby to assist in the prosecution.   In this there was no error. *Polin v. The State*, 14 Neb., 540.

The fifth and sixth assignments of error are to the effect that the trial court erred in its rulings upon the admissibility of testimony offered by the state and by plaintiff in error during the trial.   These assignments are too general. If it is desired to have the rulings of the lower court reviewed by this court such rulings as are thought to be objectionable should be designated or pointed out.   We have examined the evidence throughout, and are unable to find such prejudicial error as would call for a reversal of the case.

The next question presented is, that "the district court erred in permitting the district attorney to make misstatements of the evidence, and statements not warranted by the evidence, prejudicial to the accused in the argument of

the case to the jury." By an examination of the bill of exceptions we find the facts stated or recited therein that, in the argument of the case to the jury, the district attorney made use of certain language there quoted, which it is said was objected to and the language "taken down at the request of counsel for defendant." But nowhere is it shown that the ruling of the court upon the objection was adverse to plaintiff in error, or that any ruling thereon was requested. The supreme court, in the exercise of its appellate jurisdiction in cases of this kind, is limited to the correction of the errors of the district court. Before a case can be reversed and a new trial ordered it must appear that the court before whom the accused was tried erred, and that such error was prejudicial to the party on trial. The practice in this state is now settled in this respect, and before this court can review questions of this kind the attention of the trial court must be challenged by a proper objection to the language and a ruling had upon the objection. If the language is approved by the court, and the attorney is allowed to pursue the objectionable line of argument, an exception to the decision can be noted. By a bill of exceptions showing the language used, the objection, ruling of the court, and exception, the question can be presented to this court for decision. If the trial court sustains the objection, and thus condemns the language and requires the attorney to desist and confine himself to the evidence in the case, no injury is suffered by the accused. *Cropsey v. Averill*, 8 Neb., 160. A large number of authorities are cited by plaintiff in error for the purpose of showing that a new trial will be granted where it appears that the attorney for the prevailing party has abused the privileges of counsel in an argument to a jury. It is quite probable that where such abuse is apparent and to the prejudice of the unsuccessful party, it should be done. But it must be upon a proper record showing a refusal of the district court to correct the wrong if any be done.

In *Cleveland Paper Co. v. Banks*, 15 Neb., 20, a new trial was granted for what doubtless seemed to the court to be a flagrant abuse of the privileges of the attorney for the prevailing party. But it is noticeable that the question of practice was not involved and was not decided in that case except in so far as it affected the conduct of the successful party in the district court.

The eighth point presented by the brief of plaintiff in error is, that "the court erred in refusing to give the seventh paragraph of instructions asked by defendant." The instruction referred to is as follows: "The jury are instructed that the law makes the defendant in this case a competent witness, and that the jury have no right to d sregard his testimony on the ground alone that he is the defendant and stands charged with the commission of a crime. The law presumes the defendant to be innocent until he is proven guilty, and the law allows him to testify in his own behalf, and the jury should fairly and impartially consider his testimony, together with all the other evidence in the case; and if from all the evidence the jury have any reasonable doubt as to whether the defendant committed the crime in manner and form as charged in the indictment, you should give the defendant the benefit of the doubt and acquit him."

Viewing this instruction as an abstract statement of the law of the land as applicable to a proper case, we might not differ with the counsel for plaintiff in error. But we are left wholly in the dark as to its applicability to the case at bar. We have carefully read all the testimony introduced upon the trial, and have again carefully gone through the record, which is quite voluminous, and we are unable to find any word of testimony given by the accused in his own behalf. There is no record of his having been sworn as a witness. The instruction did not apply to the case and was rightfully refused. Instructions must be based upon the evidence. *Meredith v. Kennard*, 1 Neb.,

319.   *Neihardt v. Kilmer*, 12 Neb., 38.   *City of Crete v. Childs*, 11 Neb., 257.   *Williams v. State*, 6 Neb., 334.

The trial court refused to give the fifteenth instruction asked by plaintiff in error.   This instruction was a literal copy of section 27, page 165 of the Compiled Statutes of this state, defining the boundaries of Gage county, following with the charge that unless it was proven by the evidence that the offense charged in the indictment was committed within the boundaries of said county it was the duty of the jury to acquit.   This instruction had already been substantially given to the jury in the twelfth instruction given upon the motion of plaintiff in error, a part of which was as follows:   " It is necessary for the state, in order to secure a conviction in this`case, to prove beyond a reasonable doubt that the crime was committed in Gage county, Nebraska."   This was sufficient upon that point. · If an instruction has already been substantially given one similar to it may be refused.   *Olive v. State*, 11 Neb., 30.   *Binfield v. State*, 15 Neb., 489.   *Kerkow v. Bauer*, Id., 167.

The next assignment of error contained in the brief of plaintiff in error is, that "the court erred in giving the tenth, twelfth, thirteenth, fifteenth, and seventeenth paragraphs of instructions given by the court on its own motion."   No suggestion is made as to how or in what particular the court erred in giving these instructions, and nothing further concerning them is contained in the brief. As the next assignment of error includes in the same general way all the other instructions (except the first) given to the jury, otherwise than at the request of plaintiff in error, we will dispose of all, except the eighth, by saying we have examined them and see no good ground for criticism.

The eighth instruction, being specially pointed out as objectionable, will be noticed with more particularity.   It is as follows:   "The court further instructs the jury that

the rule requiring the jury to be satisfied of defendant's guilt beyond a reasonable doubt, in order to warrant a conviction, does not require that the jury should be satisfied beyond a reasonable doubt of each link in the chain of circumstances relied upon to establish defendant's guilt; it is sufficient if, taking the testimony altogether, the jury are satisfied beyond a reasonable doubt that the state has proven each material fact charged, and that the defendant is guilty."

It is insisted that as this case depended upon circumstantial evidence this instruction must have had great weight with the jury, and might have misled them to the prejudice of plaintiff in error if it was considered by them at all in their deliberations. As was intimated in *Marion v. The State*, 16 Neb., 349, decided by this court during the last term, this instruction standing alone might mislead a jury. In such a case, it seems to us, it should be looked upon with disfavor. Unexplained by other instructions it might be misunderstood. As we understand the rule in cases of circumstantial evidence it is necessary, in cases of this kind, for the state to prove beyond a reasonable doubt every circumstance which is *essential* to the conclusion. Starkie on Evidence, 855. Burrill on Circumstantial Evidence, 136.

An alleged circumstance may, in the language of the instruction, be "relied upon" in the chain of circumstances by which the guilt of an accused is sought to be established or the conclusion reached, and yet not be essential to that conclusion. A circumstance may be "relied upon" by the prosecution as tending to prove facts from which the inference of guilt is to be drawn, and yet it may not, in the language of Starkie, be one of the "circumstances from which the conclusion is drawn." The ultimate conclusion of guilt is drawn from certain essential facts, from the existence of which the mind is logically and irresistibly forced to infer the main fact to be proved. If one of these essential facts

is wanting, the mind fails to reach the conclusion. To illustrate, we will suppose a dead body is found upon the public highway. Upon inspection it is apparent that death has been recent and from external violence. A person is subsequently charged with the commission of a murder in killing the deceased. The evidence is circumstantial. Among the circumstances proven is, that at about the time of or soon after the death of deceased a person was seen some distance from the body going hastily in a direction opposite to that of the body. From the distance at which he was observed he is said by the witnesses who saw him to be of the same general description of the accused, and that they believe it to have been him. This fact is relied upon by the prosecution as one "link in the chain of circumstances" "to establish the defendant's guilt," and it is so urged upon the attention of the jury as proof that it was the accused who was thus seen by the witnesses. But the jury, satisfied beyond a reasonable doubt of the guilt of the accused, from a convincing array of *other* circumstances, wholly disbelieve that the person seen by the witnesses was the accused, and are satisfied that it was another individual. It would not necessarily follow that they should for that reason acquit.

A man is accused of the murder of his wife by the administration of a deadly poison. All the circumstances of the case point with almost absolute certainty to his guilt. The jury are satisfied of it beyond a reasonable doubt. He is proven to be devoid of affection for her, has been seen to cruelly maltreat her. His conduct toward another woman establishes the fact that she has supplanted his wife in his affections. The poison has been found within the body of deceased in a sufficient quantity to produce death. He is shown to have recently purchased the same kind of poison for the alleged purpose of destroying a family dog which has been permanently injured but which he wishes to kill without pain. It is shown he had no dog, and none

had been injured.   He has but recently caused the life of his wife to be heavily insured.   He has been heard to make threats and insinuations which, in the light of subsequent events, show that he intended and confidently expected her death at an early day.   A witness is called for the prosecution, who testifies that at a particular time he saw the accused in the company of the other woman under circumstances of very questionable propriety, and which, if believed, would establish illicit intercourse between them. This last fact is "relied upon" as a "link in the chain of circumstances" to establish the fact of his guilt of the crime charged.   The jury are fully satisfied of his guilt, but from the conduct or demeanor of the witness, or from some other cause, do not believe the story of the illicit intercourse. Must they therefore find the accused not guilty?   Clearly not.   That circumstance, although "relied upon," should be disregarded.

By an examination of the other instructions given to the jury it is very apparent that the language used in this eighth instruction was used in the sense above indicated, and could not, in connection with the others, mislead the jury.   "The true meaning and effect of instructions are not to be determined by the selection of detached parts thereof, but by considering all that is said upon each particular subject or branch of the case." *St. Louis v. The State*, 8 Neb., 405.   The instructions given to the jury were full and elaborate.   The law of circumstantial evidence was fully explained, and the jury were thoroughly informed that all the inculpatory facts necessary to establish the guilt of plaintiff in error should be fully proved; and that they must be such facts and circumstances as were absolutely incompatible with the innocence of plaintiff in error and incapable of explanation upon any reasonable hypothesis other than that of his guilt.   In *The State v. Hayden*, 45 Iowa, 11, the trial court was requested to charge the jury as follows:   "As the evidence in the case

is wholly circumstantial, you must be satisfied beyond a reasonable doubt of each necessary link in the chain of circumstances to establish the defendant's guilt." This instruction was refused, and the following was given by the court: "The defendant is presumed to be innocent of the crime charged until proved guilty beyond a reasonable doubt; and as the evidence in this case is circumstantial, it is your duty to give all the circumstances a careful and conscientious consideration, and if upon such consideration the minds of the jury are not firmly and abidingly satisfied of the defendant's guilt, if the conscientious judgment of the jurors wavers and oscillates, then the doubt of the defendant's guilt is reasonable, and you should acquit." The court, by Rothrock, J., say: "The instruction asked by defendant was properly refused, and that given by the court is correct. It is not a reasonable doubt of any one proposition of fact in the case which entitles to an acquittal. It is a reasonable doubt of guilt arising upon the consideration of all the evidence in the case."

In *Sumner v. The State*, 5 Blackf., 579, the following instruction was asked by the defendant, who was on trial for the murder of his wife: "Every circumstance material to this case must also be proved beyond a rational doubt, or it is the duty of the jury to discard such circumstance in making up their verdict." This instruction was refused, and the refusal held to be error. Blockford, J., in writing the opinion of the court, says: "We think that if the jury, in making up their minds from circumstantial evidence, have a rational doubt as to the existence of any of the material circumstances attempted to be proved, that circumstance ought not to have any influence with them in forming their opinion respecting the guilt or innocence of the defendant; or, in the language of the instruction asked, the jury ought in such case 'to discard such circumstance in making up their verdict.'" Applying this rule to the case at bar it was not only correct for the court to instruct the

jury that it was not necessary that each link relied on should be proved beyond a reasonable doubt, but it would have been competent to instruct them that if any of the circumstances "relied upon" were not proven they might discard them entirely and consider the case without reference to them.

The next and last proposition contained in the brief of plaintiff in error is, that "the evidence was not sufficient to sustain the verdict of the jury." It is impracticable in this opinion to discuss the evidence at any great length. The trial was a long one, the record is voluminous. The circumstances pointing toward plaintiff in error are numerous, and are such as to convince the mind of his guilt. The evidence shows that the deceased was a young unmarried man living with his father in Schuyler county, Missouri. That plaintiff in error lived a short distance away, and was above middle age, his hair and beard being quite gray. Deceased was the owner of a span of mules, wagon, and harness, and about one hundred dollars in money, besides some personal property in the way of farming implements. By reason of certain representations plaintiff in error induced young Voorhees to accompany him, with the property, to Nebraska, leaving home on the twenty-eighth of November, 1878. These representations consisted in a flattering description of the beauties of Nebraska, with the further suggestion that plaintiff in error was the owner of a farm in this state on which a crop of corn was standing, which would furnish plenty of feed for the team of deceased, and which would be at his service. They did not leave the home of deceased together, but agreed to meet at a point a short distance on the way. Plaintiff in error was a larger man than deceased. Deceased took with him a quantity of under-clothing and other articles of property, which were placed in an ordinary boot box and put into the wagon. Among the articles taken by deceased was an "S" wrench, for use

about the wagon, which was given him by his father, who, before putting it in the wagon, made upon it three private marks with a hand-saw file. Soon after this time deceased was seen in Beatrice in company with another person, who is not fully identified as the plaintiff in error, but whose peculiar motions and the manner in which he wore his hat were described as similar to the accused. Plaintiff in error soon afterward, about Christmas, 1878, returned to Missouri alone. In a conversation with one of the witnesses with whom he had not been previously acquainted, he stated that he had been to Nebraska and Kansas. He did not go home, but went to work about thirty miles from there at a saw-mill, hauling railroad ties with a team and wagon which he had, but which were not the team and wagon formerly owned by Voorhees. He secured a boarding place for himself and team, but declined sleeping in a bed, preferring to sleep on the floor near the fire with no bedding but his blankets and without removing his clothing. He appeared to be watchful, wakeful, uneasy, and suspicious. During the night he often went out, waking the family, and when spoken to about his conduct he gave as a reason that he had recently traded a span of mules for the team he then had and that one of his horses was inclined to be fractious and he was uneasy about them. He had a boot box in which his clothing, etc., were kept. Part of his under-clothing was noticed by the woman who did his washing to be much smaller than his other garments of the same kind, and at each time they were washed had to be mended, having the appearance of being "bursted." He disposed of some property in the neighborhood, amongst which was the identical "S" wrench furnished young Voorhees by his father. This wrench was produced in court and fully identified by the father. The man with whom he boarded was in the habit of arising at four o'clock in the morning. It being in the winter it was not yet light. He testifies that plaintiff in error was always up before him and gene-

rally at the barn.   That when the witness went to the barn plaintiff in error would always hail him and ask who was there.   It was the custom of the person hiring the men to haul ties to pay them at the end of the month, but plaintiff in error insisted upon collecting his wages at the close of each day.   He remained there from about Christmas until in March, 1879, following.   During this time he went away twice to see his family, who lived near the former home of Voorhees, and about thirty miles distant, making the trip in the night.   When asked by those who knew of his having left Missouri with young Voorhees as to what had become of Voorhees, his statements were very contradictory.   To some he said deceased had left him at a camping place in the night, without taking his clothing and without any intimation that he was going, and he had never heard from him since.   And when asked what he had done with the team and wagon belonging to deceased, he replied that he had traded it off, as Henry Voorhees' father would have taken them away from him.   To others he said deceased had sold his team in Kansas and had gone to Texas to herd and drive cattle on the plains; that he had hired to some cattle men for that purpose.  ·  He stated to some that he did not like "Old Man Voorhees," and had long desired to get even with him, and that he had now succeeded.   'That he had enticed his boy Henry away from him, and he would never hear of him again.   In the evening of the last day he worked hauling ties he was informed that a man had been inquiring for him in the vicinity, when he immediately hitched up his team and left without waiting to eat supper, and was seen there no more.   He appeared in the neighborhood where the father of Voorhees resided, near his own home, and enquired of a neighbor as to what people thought had become of deceased, and upon being informed that it was believed he had murdered him, he requested that nothing be said about his presence until nine o'clock next day, by which time he

11

could make his escape into Iowa.   In this conversation he stated he had left deceased on the Missouri river, where he was teaming, and that he was then corresponding with him, looked in his pocket-book as if hunting for the letters, and then said he had left them at his boarding place.   This was the last seen of him by any of the witnesses until his capture in Council Bluffs and incarceration in jail at Beatrice.   After his arrest and confinement he sought to render his identity uncertain by coloring his hair and having his beard cut off, and afterwards, when visited in the jail by those with whom he was well acquainted, he denied his identity.

The identity of the dead body found in Gage county in the early spring of 1879 as the body of Henry Voorhees is beyond any question.   A "tattoo" mark, "H. C. V." upon his arm, as well as a correct photographic likeness of the dead body, which was identified by his father and others, place the question of identity beyond any question.   It is also shown that he came to his death by external violence, and, by wagon tracks in the prairie grass, it is shown that the body was placed where it was found by some one seeking to conceal it.

The evidence, only a part of which is here reviewed, is sufficient to sustain the verdict.   From a full examination of the case, such as its great importance requires, we are satisfied that justice so long delayed has been done, and that there is no such error in the record as to require a reversal of the judgment.   It is therefore affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.