Mr. Justice Hagner
delivered the opinion of the court:
This case comes here on exceptions to the refusal of the *586 court below to grant a new trial. The prisoner was convicted on October 26, 1888, of the murder of William Jones. The defense had insisted the killing was justifiable se defendeudo, or at most, was only manslaughter. All the testimony on behalf of the prisoner set forth in the record was addressed to these two defenses.
On October 30 a motion was filed for a new trial, supported by affidavits. The principal ground of the motion was thus stated:
“ First. For mistake, error, and irregularity in the conduct of the trial, in this, that while the counsel for the defense was arguing to the jury that there was no malice aforethought, and lienee no murder, and that there was, perhaps, no passion, and therefore, not even voluntary manslaughter, but homicide excusable for self defense, he stated that one witness had testified that the accused fired two shots, the first over the shoulder of the deceased, and then put the pistol back into his pocket, and fired the second shot while he and the deceased were advancing towards each other, the deceased, with a stone in his hand, and his brother near by attempting to obtain one; that thereupon counsel for the Government denied before the jury that any witness had stated that the accused had returned the pistol to his pocket as aforesaid, and the court concurred within the hearing of the jury in the statement of the District Attorney, remarking that the court had no recollection of such a statement having been made, or words to that effect, when, as a matter of fact, one Washington Lewis, a witness summoned by the Government, did so state ; yet, notwithstanding, the counsel for the Government argued in his closing address to the jury that no such statement had been made, but existed only in the imagination of counsel for defense; and that thereupon the jury took the case, without correction of said error, and, with the aforesaid intimation by the court and counsel for the Government that such statement had never been made, said intimation tending to mislead the jury and *587 confuse their independent recollection of the facts, and embarrassing counsel for defense in presenting the facts brought out in evidence.”
The bill of exceptions gives no other statement of the testimony of Washington Lewis as delivered to the jury, except that “ Washington Lewis and William Carter ” (and five others named), “ each and all testified that they had known the defendant for some years, and that his reputation for peace and good order was good.”
Lewis had been summoned on behalf of the United States but was not called by. the Government, and was examined on behalf of the defendant. With the motion were filed the affidavits of Messrs. Carrington and Cruikshank, the counsel of Briggs; and of Green and others who were present at the trial, all of whom swear they heard Washington Lewis testify before the jury in the manner set forth in the motion; and Cruikshank states further that his notes, taken at the time, confirm his statement. The affidavit of Lewis himself is also directly to the same effect. There were also filed with the motion the affidavits of three persons (one a police officer), who were witnesses of the shooting, all tending to support the truth of the statement alleged to have been made by Washington Lewis at the •trial.
The presiding justice in his opinion overruling the motion, said : “I have no recollection that Lewis testified as is asserted, but I think the affidavits filed fairly establish the fact that he really did so swear.” We may assume, therefore, that so much of the motion as avers that Lewis did testify as alleged is in accord with the fact.
The interruption by the District Attorney, while the prisoner’s counsel was attempting to state the purport of the testimony of Lewis, is thus described in the affidavit of James McDowell Carrington, who says:
“ I was counsel for the defendant in the case of the United States vs. Briggs, No. — . I conducted the examination of *588 the witnesses in said case for the defense. I examined Washington Lewis, a witness for the Government. During the progress of the case I asked him, in substance, how the firing was done by Briggs. His reply, to the best of my recollection and belief, was that Jones, the deceased, was advancing on Briggs; that Briggs fired the first shot over the shoulder of said Jones, and that after firing this shot Briggs put the pistol back into his pocket; that Jones continued to advance, and that then Briggs drew the pistol out and fired the second shot; that affiant had never heard this before and was surprised at it, and considered it an important statement for the defense, and thus had it impressed upon his memory; that in that part of his argument in which he was attempting to impress the jury that there was no malice aforethought, and, therefore, no murder, and, perhaps, not undue passion ; and, therefore, not voluntary manslaughter, but simply homicide, excusable for self defense. Affiant attributed said statement to the said witness, Lewis, when Mr. Lipscomb, the Assistant District Attorney, in substance, denied that there was such a statement made by said witness Lewis, and to the best of affiant’s recollection and belief the court concurred with Mr. Lipscomb, and said in the hearing of the jury that he recollected mo such statement by said witness. That affiant’s associate counsel, Mr. Oruik shank, was silent at the moment, from the reason stated in his affidavit. That while affiant was impressed with the belief that he was right, yet his confidence was shaken for a time in his own memory, and it embarrassed him in his argument, and, he believes, broke the force of it as he had arranged it in his mind; that when Mr. Lipscomb replied, he used it against the defense by such expressions as these: “ That it did not become Mr. Carrington to speak of imagination when he had asserted that one of the witnesses had made the aforesaid remark,” which he claimed was pure imagination on affiant’s part; that upon reflection since said trial, and after conversation with others, affiant is as certain *589 that said witness so testified as he is of any other fact in the case. I did not know the statement of Lewis was on Mr. Cruiksbank’s notes until he told me the next day, and we both immediately went together to the District Attorney’s office and reported the matter.”
John Cruikshank says: “ I was associated with James McDowell Carrington, Esq., in the defense of Briggs, tried. on the 25th and 26th days of October, 1888, for murder. I was not in the court-room on the first day of the trial until after the recess. . At that time all the witnesses had been examined in chief by the prosecution, with the exception of officer Trunnell. I took notes of the testimony of officer Trunnell and of the testimony of all the witnesses for the defense; of that of Howard, called by the Government, and the witnesses recalled for questions by the judge. Mr. Carrington having commented on the statement of Lewis, that Briggs, having fired the first shot, put the pistol back in his pocket, and the prosecuting officers having denied that such statement had been made by Lewis, who was referred to by Mr. Carrington, as I recollect, not by name but as a Government witness, I referred to the notes which had been taken of the Government’s testimony before my arrival, which notes referred only to the testimony of Williams and Chesley, and I did not find the statement referred to. After-wards, in looking over my notes 'of the testimony for the defense, I found the statement referred to in the testimony of Washington Lewis, who was examined by Mr. Carrington. Not knowing at the time that Lewis was on the list of the Government witnesses I did not call the attention of the court to the subject, supposing, also, that as he was examined for the defense the statement of Mr. Carrington might possibly be erroneous. Early the next morning I showed Mr. Carrington my notes, and we reported the facts to the District Attorney’s office. Both the Assistant District Attorney and the judge stated that they did not recollect Lewis to have made the statement referred to.”
*590 The presiding justice in his opinion says:
“I do remember that on the argument, and while counsel for the defendant was proceeding, he was interrupted by the Assistant United States Attorney, who called the attention of the court to the fact that counsel was misstating the evidence; stating, in substance, that it was being argued that a witness for the Government had so testified, whereas in truth he had not, and the court was appealed to not to permit that line of argument. The court then did say that he had no recollection of such evidence, and that line of argument was abandoned.”
The justice thus fully sustained the statement of the defendant’s counsel. It cannot be doubted that this utterance by the learned court was an intimation of so positive a character that the jury might reasonably have concluded the statement of defendant’s counsel was incorrect. It in effect withdrew this part of Lewis’s testimony from the jury and thus ruled out an important portion of the defendant’s case; for there can be no question that upon the defense of justifiable homicide, the evidence of Lewis might have been of great importance. It tended to show the defendant was indisposed to shoot; that when the defendant was advancing upon him with a stone in his hand, he fired the first shot over his shoulder, evidently with a view only of intimidating him, supposing that would be sufficient to make him retreat; and that it was only after the deceased continued to advance, the defendant took out his pistol and shot him.
The defendant’s counsel declare they considered this intimation of the court as a direction that this line of argument would no longer be allowed. We cannot forbear saying that under the circumstances the counsel for the defendant was to blame in abandoning the point; for he had the right, at the time, in a proper manner to insist that his recollection of the testimony was correct; and to ask that the witness should be recalled; and to appeal to the recollection of the jurors to support his statement. Rep *591 resenting as he did his client’s most precious interests, he should have pressed the point in one of the methods indicated ; and that the court would have assisted him in doing so we cannot doubt. But if the justice should have still refused his motion, then, according to several cases cited by defendant’s counsel, the appellate court could have reviewed such refusal on exceptions. In Bradshaw vs. The State of Nebraska, 17 Neb., 147, it is said:
“ Where it is alleged that an attorney, in the argument of a cause on trial to a jury, made misstatements of the evidence, and went outside of the record in his statements of the facts proved on the trial, the attention of the court should be called to the language and conduct of the attorney by the proper objection, and a ruling had thereon by the court. If the objection is overruled and an exception taken, the exception may be reviewed in the Supreme Court upon the language, objection, ruling, and exception being made a part of the record by the proper bill of exceptions, but not otherwise.”
The trial justice, in overruling this motion, though admitting “the affidavits filed, fairly establish ” that Lewis did so testify on the trial; and, also, that the counsel for the defendant, because of the intimation of the court, did, in fact, discontinue the line of argument he was then pursuing, says: “Assuming, as I do, that Lewis did so testify, he was clearly mistaken. He was contradicted by every other witness on both sides, even by the defendant himself. It follows, therefore, that if a new trial should be granted and Lewis should again so swear, his story could not, and would not, be believed.”
We think this was an insufficient reason for refusing the new trial. It was quite impossible for the court to ascertain that the jury might not have believed Lewis’ statement if it had been left for their consideration, in preference to that of the witnesses for the prosecution. It was for the jury to say whether they would believe Lewis or *592 somebody else, for the really great question they were called upon to determine was, which of the witnesses who testified before them told the truth and should be believed.
The justice further said:
“Second. In the hurry of a trial, the court is appealed to to permit or to prevent a certain line of argument, on the ground that a witness has or has not testified in a certain way. The best that can be done by the court is to so press his recollection as a basis for his ruling, subject-always, however, to the recollection of the jury.” But at the time the justice stated before the jury “he had no recollection of such evidence,” lie did not proceed to say that whether the alleged testimony was actually given by Lewis was still a matter for their ultimate decision; nor did he make such a declaration in his charge to the jury.
This, we think, should have been done, under the circumstances of the case, and the omission was error.
The opinion proceeds- — -
“Third. If the court should assert that to his recollection a certain fact had been testified' to, which fact was prejudicial to the defendant, when, as a' matter of fact, it has not, that assertion might do harm, because the jurors might properly conclude that the testimony had been given and overlooked by them; whereas, the effect could not be the same by the mistaken assertion that certain testimony had not been given when, in fact, it had, as such fact that it had would be a positive fact, and if the evidence was heard by the jury they would know that the court was in error.”
We cannot agree that the distinction thus suggested by the justice is correct. The positive statement that he had no recollection of such testimony by Lewis, made by a painstaking justice, with his notes of the testimony before him, could not fail to influence the jury and cause them at least to hesitate to rely upon their recollection of what Lewis had said; especially when the prisoner’s .counsel had *593 apparently acquiesced in the statement of the court supporting the assertion of the District Attorney.
Two other grounds were urged for setting aside the verdict — first, that the verdict was contrary to the evidence; and next, because of the absence of an important witness named Ferguson, who is said to have been present at the time of the homicide. It appears this witness had left Washington for Pittsburgh on October 2, 1888, and the trial came off on the 25th of that month. The counsel for the defendant testified that some weeks before the trial he had gone to the house where Ferguson had been living and then there, for the first time, ascertained he had moved from the city to Pittsburgh, and had since made efforts to' procure his evidence. This does not present full proof of due diligence to procure the attendance of a witness which would be required in a civil case. Although there should be a strict observance, in all applications for new trials, of the rule that due diligence should be shown, and proper effort made to secure the’ testimony, it is well settled that in criminal cases, especially in -capital cases, the courts will not always require the same strictness that is exacted in civil cases on such applications. The affidavit of Ferguson, taken in Alleghany County, Pa., states “ that he was an eye witness of the whole affair, and is prepared to give an account of it when called upon to do so by the court; that he was not at the trial of Briggs; that Briggs was pretty well used up by the Joneses during the first part of the trouble; that when he got loose from them he started to run down the road; the Joneses throwing rocks at him ; the trouble was renewed when Briggs returned, he having been away for some minutes and come back ; Briggs came back the near way and was standing on the bank when some talk about the hat commenced again; Jones jumped up and said, ‘If you draw a pistol on me, I will kill you,’ and at the same time picked up a rock, advancing rapidly on Briggs; Briggs *594 backed and fired the first shot over Jones’s shoulder; Briggs continued to fall back and as he did so dropped the pistol to his Side; Jones continued to advance on him and got upon the bank with his hand up and the rock in it; Briggs then jerked his pistol up again and fired; Jones staggered back and fell over the bank.”
When it is to be considered that this witness is shown to belong to the class of poor people, who, in looking for work, are accustomed to go wherever they can get employment, there is nothing to show any neglect on the part of the prisoner’s counsel. The testimony would certainly be of importance, if believed by the jury. We think Ferguson’s absence constitutes a strong ground for a new trial under the circumstances of this case.
In looking through the record we find that, although the testimony of the witnesses for the Government seems to be set forth with considerable fullness, there is scarcely a word given of the testimony of the half dozen witnesses for the defense, and several of those are disposed of in one line. A similar omission was remarked by the court in United States vs. Green, 6 Mackey, 562, and contributed greatly to the determination of the court in that case to grant a new trial. Under such circumstances we would not be satisfied to affirm the ruling below, if we were only considering the question of the sufficiency of the evidence to sustain the verdict. But upon the entire case, we think the motion for a new trial should be granted.