JOHN McLAIN, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

1. **Instructions Upheld.** The instruction of the court to the jury examined, and *Held,* Free of objection in point of law, and as favorable to the accused as the evidence would justify.

2. **Confession.** When no confession or admission of guilt has been made by a party on trial for a criminal offense, it is immaterial what inducements may have been held out to him for the purpose of obtaining a confession or admission of guilt.

3. **Argument of Attorney.** Where the language used by the district attorney or assistant counsel, in opening a case or summing up to a jury, is deemed prejudicial to the accused, "the attention of the court should be called to it, by proper objection, and a ruling had thereon. If the objection is overruled and an exception taken, the question may be reviewed in the supreme court upon the language, objection, ruling, and exception being made a part of the record by a proper bill of exceptions, but not otherwise." *Bradshaw v. State,* 17 Neb., 147.

4. ———. *Held,* Not error on the part of the court to allow counsel for the state, in summing up to the jury, to comment upon the presumption of guilt arising from the possession, by the accused, of recently stolen goods, without explanation of such possession, even where counsel fail to state the law with technical accuracy.

5. **Evidence Sufficient.** The evidence in the case, *Held,* Sufficient to sustain the verdict.

McLain v. State.

ERROR to the district court for Otoe county. Tried be-
low before POUND, J.

*J. L. Mitchell* and *John C. Watson*, for plaintiff in error,
on instruction No. 6, cited: *Mullins v. People*, 110 Ill.,
42. *Maltese v. State*, 59 Ohio State, 215. On instruc-
tion. No. 9, cited: *Watson v. Commonwealth*, 95 Penn.
State, 413. *State v. Sidney*, 74 Mo., 390. *People v.
Hurley*, 60 Cal., 74. On instruction No. 10, cited:
*State v. Harden*, 46 Iowa, 623. *State v. Jaynes*, 73 N. C.,
504. *Howard v. State*, 50 Ind., 190. On confession of
prisoner, cited: *People v. Wentz*, 37 N. Y., 303. *Boyd
v. State*, 2 Humph., 39. Wharton Cr. Ev., 651. Argu-
ment of attorney. *State v. Williams*, 18 N. W. R., 682.
Crim. Code, § 473. *Festner v. O. & S. W. R. R.*, 17
Neb., 280.

*William Leese, Attorney General*, for the state, cited:
*Jaynes v. Commonwealth*, 2 Met., 32. *Straight v. State*, 43
Tex., 486. 1 Whart. Crim. Law, § 695. *State v. Morti-
mer*, 20 Kan., 97. *State v. Johnson*, 21 N. W. R., 843.
*Fitzgerald v. Fitzgerald*, 16 Neb., 415. *Donovan v. Yard*,
Id., 33.

COBB, CH. J.

The plaintiff in error was indicted, tried, and convicted,
in the district court of Otoe county, of the crime of grand
larceny, in the stealing of a quantity of gold and silver
watches, watch cases, and jewelry, the property of Alex-
ander Calmelet. The cause having been brought to this
court on error, the questions presented arise upon the suffi-
ciency of the evidence, the admission of the testimony of
the witness Dennis Kay, misconduct of the prosecuting
attorneys, the refusal to charge, and the charge as given
by the court. These questions will be discussed in the
order in which they are presented in the brief of counsel.

It appears from the bill of exceptions that the store of Mr. Calmelet is situated on Main, between Fifth and Sixth streets, Nebraska City, on the south side of the street. The store had two doors, one front and one in the rear. On the afternoon of Saturday, the 5th day of April, 1884, at five minutes to six o'clock, Mr. Calmelet locked up his store and went to supper, at the Morton House, a few blocks distant.    He was absent from the store thirty-five minutes.    When he returned he found that an entrance had been effected by removing a glass from the back window, reaching in, and turning the key which had been left in the back door, and drawing the bolt, and the watches, watch cases, and jewelry above mentioned taken.

The matter was placed in the hands of the sheriff of the county, who, the next day, had printed a circular containing a description of the property stolen, and an offer of a reward for its return and the apprehension of the thief. Copies of this circular were mailed to sheriffs and police officers throughout the country, including the chief of police of Chicago.   On the morning of the 14th day of the same month the defendant was arrested in the shop of a pawnbroker, in the city of Chicago, by Dennis Kay, a police officer.   At the time of his arrest he had in his possession and on his person a part of the watches, watch cases, and jewelry, stolen as aforesaid, about half in value of the same.    It further appears from the bill of exceptions that at the time of the breaking into the said store and larceny of said goods, the defendant was in Nebraska City, and had been there for about two weeks.   That during said time he took his meals at the restaurant of William Ince, and roomed in the Barnum House.   That he was without any known occupation, but claimed to be about to open a shooting gallery.   There was also evidence tending to prove that he was without money.

He continued to take his meals at Ince's restaurant until Friday, April 10, when he disappeared, and was not seen

there again, nor elsewhere in Nebraska City, until he was. brought back after his arrest in Chicago.

The only evidence offered on the part of the defense. (except of one witness) was that which tended to prove an *alibi,* and it can not be denied that such evidence was very strong. Captain Murfin, Mrs. Wm. Ince, Nettie Knight,. and Richard Filbon all testified to facts in relation to the presence of defendant in the dining room of Ince's restaurant between the hours of five and seven o'clock on the evening of the larceny, which, if true, and no doubt is cast. upon the honesty or candor of either of the witnesses, and. the clock in the dining room indicated the correct time,. was sufficient to establish the impossibility of the defendant's being at the scene of the larceny at any time between five minutes before and thirty minutes after six, the whole period of Mr. Calmelet's absence from the store, according; to his testimony. But W. W. Brown, a witness on the part of the state, testified that he was on Main street,. diagonally opposite to and across the street from Calmelet's store, on the evening in question, twenty minutes or a half an hour before he went to his supper at the Morton, House. Saw Calmelet come out of the store, and pass up the street, and that shortly afterwards, and when witness. had time to walk about three-fourths of a block, he met, defendant and passed him on the sidewalk, diagonally and on the opposite side of the street from Calmelet's store. That defendant was alone, and looking in the direction of Calmelet's store. Witness testified that within twenty-five minutes or half an hour from the time of his meeting defendant on the sidewalk, as above stated, he heard, at Reed's drug store, of the robbery of Calmelet's jewelry store. Witness testified that the time when he saw Mr. Calmelet come out of the jewelry store and pass up street was not earlier than five minutes before, nor later than five minutes after six o'clock, and though he was subjected to. a searching cross-examination, none of his statements were. in the least shaken.

I have stated the substance of the testimony for and against the *alibi* for the purpose of introducing the instructions prayed by the defendant and refused by the court, which refusal is urged as error. The instructions prayed were as follows:

"No. 6. The jury are instructed that the burden lies on the state to prove the falsity of the defendant's *alibi* beyond a reasonable doubt."

"No. 9. The jury are instructed that the presumption arising from the possession of stolen property is completely removed by the proof of an *alibi* for defendant."

"No. 10. The court instructs the jury that while possession of stolen property recently after the theft, if unexplained, is a circumstance tending to show the guilt of the possession, still, in this case, if the jury believe from the evidence that the defendant at the time of the commission of the larceny was at the restaurant of William Ince, and not at the place of said larceny, this is a satisfactory account of his possession of the property, and removes every presumption of guilt growing out of such possession."

The following instructions bearing on the point of defendant's evidence tending to prove an *alibi* were given:

"4. It is a rule of evidence in trials for the larceny of goods that the finding of the stolen goods in the exclusive possession of the accused very recently after the larceny was committed, is presumptive evidence that he stole them, and in this case if the goods mentioned in the indictment were stolen, and shortly after the larceny they or a portion of them were found in the exclusive possession of the accused, the presumption arising from such possession is that the defendant stole them. But the defendant having introduced evidence to show that he at the time of the larceny was at another place and could not have perpetrated the crime, the burden still rests upon the prosecution to prove the defendant did commit said larceny and is guilty, beyond a reasonable doubt."

No. 1 of instructions given as prayed by defendant: "Where a person on trial for a crime shows that he was in another place at the time when the act was committed, he is said to prove an alibi."

"No. 2. One of the defenses interposed by the defendant in this case is what is known as an alibi, that is, the defendant was at another place at the time of the commission of the crime, and the court instructs the jury that such defense is as proper and as legitimate if proved as any other, and all evidence bearing upon that point should be carefully considered by the jury, and if, in view of all the evidence, the jury have any reasonable doubt as to whether the defendant was in some other place when the crime was committed they should give the defendant the benefit of the doubt and find him not guilty."

"3. As regards the defense of an alibi the jury are instructed that the defendant is not required to prove that defense beyond a reasonable doubt to entitle him to an acquittal. It is sufficient if the evidence upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged."

"4. The court further instructs the jury that if they believe from the evidence that at the time of the alleged larceny and at the hour that the crime was committed the defendant, McLain, was at the restaurant of William Ince, as testified to by some of defendant's witnesses, and was not present at the scene of such larceny at the time of its commission, then you must acquit the defendant."

"5. The jury are instructed that if you entertain any reasonable doubt as to whether or not the defendant, McLain, was at Ince's restaurant or at the scene of the larceny, Calmelet's store, at the time the larceny was committed, then it is your sworn duty under the law to give the benefit of the doubt to the defendant and acquit him."

"7. The jury are instructed that if you should entertain a reasonable doubt as to the defendant's guilt he should be

acquitted, although the jury might not be able to find that the alibi was fully proved.

" 8. The jury are instructed that the fact that the defendant may not be able to show how or where he acquired possession of the property alleged to have been stolen is by no means conclusive of his guilt, but merely raises a presumption of guilt, which he may rebut by proof that at the time of the commission of the offense he was some distance from the place of taking."

These instructions presented to the consideration of the jury the defendant's evidence of his *alibi* in a light as favorable to him as the law would justify the court in doing, and indeed I think the court went rather too far in that direction. The most that could be required was, that the jury be told that the burden of proof did not shift to defendant upon the question of *alibi*, and that if upon all the evidence, including that for and against the *alibi*, there was a reasonable doubt of his guilt, they must acquit him. This they were told in effect so often as to almost infringe upon the rule which forbids a court in instructing a jury to give undue prominence to particular facts or a particular branch of the case. See *Campbell v. The People*, 109 Ill. R., 565.

Plaintiff in error, in the brief of counsel, also makes a point upon the giving of No. 5 of instructions given on behalf of the state, which is as follows:

" No. 5. If the evidence satisfies you that said goods were stolen, then, in passing upon the question of the defendant's guilt or innocence, you should consider the evidence as to the goods having been found in the possession of the defendant as well as the evidence as to defendant's opportunity or want of opportunity to commit the larceny, his conduct at or about the time of the larceny and prior and subsequent thereto, and what, if anything, he may have said respecting the larceny, as well as all the attending circumstances as shown by the evidence admitted in the

case." Counsel do not point out in what respect the giving of this instruction was prejudicial to the plaintiff in error, nor do I perceive in what light it can be held to be error, much less prejudicial error.

A considerable part of the brief of counsel is devoted to a discussion of the question of the admissibility of confessions made by the accused while under arrest, and induced by those having him in arrest by threats of punishment or promises of favor. While I am inclined to agree with counsel in the main in what they say as to the law on that subject, I am unable to see its applicability to the case at bar. Certainly no witness has testified to any confession made by the accused. The giving of information by him by means of which one of the stolen articles was found cannot be regarded as a confession of guilt, and it is very clear from the whole case that it was not so intended. Neither does it appear that the police officers sought to elicit a confession of guilt from him that would secure his conviction. They did seek to induce him to divulge facts which might lead to their securing the balance of the stolen property, and probably of his associates in the crime, yet with but little success. The watch and chain which he had pawned in Chicago he knew they would find anyhow, so he gave the name of the shop where it might be found; but as to what had become of the balance of the plunder, or who had assisted him in the commission of the robbery and shared its fruits with him, or, indeed, that he had any part in its commission or received the goods from some other party knowing that they had been stolen, or otherwise, he made no sign.

It appears from the bill of exceptions that in opening the case to the jury, on the part of the state, Mr. Strode, district attorney, as a part of his remarks, referring to the apprehension of the defendant, used the following language: "The policeman knew his reputation to be that of a common thief." Upon the attention of the court being

called to these remarks by the counsel for defendant, the court admonished the district attorney that he "should not say that." And upon counsel for defendant demanding the court to instruct the district attorney "that it is improper to state what this man's reputation was," and said, "We object to anything as to this man's character or reputation being said," the court said, "You cannot prove that in the first instance, I suppose; till they show good character you cannot prove bad character." Whereupon the district attorney said, "I will desist from commenting." Again, in his closing remarks in summing up to the jury, the district attorney used the following language: "I trust the jury will do what is right, and I will be satisfied, and the people will be satisfied. But if you acquit there is no appeal for the state; that ends it as far as the state is concerned; while if you convict, and an injustice is done, the defendant has a right to appeal to the supreme court, who, if it is wrong, will reverse the case and give him a new trial." Whereupon counsel for defendant said, "I ask that that be taken down, and we except to it."

Also, it appears that Hon. F. J. Ransom, who assisted the district attorney, and who also summed up on the part of the state, in the course of his speech said, while commenting on the testimony of the witness Dennis Kay, who arrested the defendant in Chicago: "He suspected there was some crooked·work, because he knew him to be an old thief." Upon the attention of the court being called to these remarks, and objection made to them by counsel for defendant, Mr. Ransom claimed that he was commenting on the testimony. Counsel for defendant asked that the notes of the reporter be read, which was done, and it was found that the testimony of the witness Kay as to the defendant being an old thief had been stricken out. Whereupon counsel for defendant asked the court to instruct the jury that what counsel had said should have no weight with them, and asked the court to instruct counsel not to

refer to that any more, for it is not in evidence, and it is improper to do so, which, according to the bill of exceptions, " is accordingly done."

Again, in the course of his remarks, Mr. Ransom said : "He has not called any witness here, nor accounted for the property." Watson: "I object to counsel stating anything of that kind, not accounting for the property." Ransom: " I say that a person found with stolen property in his possession is bound to account for it so as to change the burden of proof." Watson: "We object."

Objection overruled, and defendant excepted.

The above is claimed to be misconduct on the part of the district attorney and assistant counsel, and a reversal of the judgment is claimed for that reason.

Similar questions have often come before this court, and its rulings have been almost, if not quite, uniform upon them. The case of *Bradshaw v. The State*, 17 Neb., 147, is quite in point as to all objections of this character in the case at bar, except the last objection raised to the remarks of assistant counsel Ransom. In that case, in the opinion by Judge Reese, the court say: " The supreme court in the exercise of its appellate jurisdiction in cases of this kind is limited to the correction of the errors of the district court. Before a case can be reversed and a new trial ordered it must appear that the court before whom the accused was tried erred, and that such error was prejudicial to the party on trial. The practice in this state is now settled in this respect, and before this court can review questions of this kind the attention of the trial court must be challenged by a proper objection to the language and a ruling upon the objection. If the language is approved by the court, and the attorney is allowed to pursue the objectionable line of argument, an exception to the decision can be noted by a bill of exceptions showing the language used, the objection, ruling of the court, and exceptions to the ruling can be presented to this court for decision. If

the court sustains the objection, and thus condemns the language and requires the attorney to desist and confine himself to the evidence in the case, no injury is suffered by the accused." In the matters which we are now considering there was but one ruling of the court adverse to the defendant. In that the court sustained assistant counsel Ransom in stating to the jury, " He has not called any witness here nor accounted for the property," and " I say that a person found with stolen property in his possession is bound to account for it so as to change the burden of proof."

The first proposition was one of fact. If counsel should be understood as meaning that the accused had called no witness to testify for him at the trial, the statement was not true in point of fact, for he had called several. But such could not have been the intent of the language, but rather that the defendant had called no witness to testify as to how he came into the possession of the goods. In this sense it was true, and I think legitimate matter to call the attention of the jury to. The other words used by him, while not stating the proposition as fully and clearly as would be required in an instruction by a court to a jury, yet did state the law substantially correct; and as nearly technically so as should be required in a forensic address. There can be no doubt, as a general proposition of law, that the exclusive possession of goods recently stolen is sufficient to put an accused person upon his defense. The remarks of counsel in summing up must be construed in reference to the evidence in the case in hand, and in that view I think they were unobjectionable.

The only remaining point to be examined is that numbered six in the petition in error. " That the verdict is not sustained by sufficient evidence and is contrary to law."

It is not questioned that the goods described in the indictment were stolen at the time and place therein stated. Nor that at that time the accused was boarding at one place and rooming at another, all within a block or two of the

scene of the larceny. It is in proof on both sides that as early as the next morning after the larceny the plaintiff in error knew that he was suspected as having committed it. One of his own witnesses testified that on the next Friday, six days after the larceny, he disappeared from his boarding house without notice of his intended departure, and three days from that time the plaintiff in error was arrested in a pawnshop in Chicago, four hundred miles away, with about half of the stolen property on his person, having already pawned a valuable gold watch and chain, part of said stolen property, for some ten or fifteen dollars.

There was also evidence tending to prove that at the time of the larceny the defendant had been in Nebraska City for about two weeks, without occupation or visible means of support. That he was talking of building and operating a shooting gallery, but was unable to raise the sum of five dollars required by the carpenter as advance payment before commencing the work.

The only defense sought to be made by the accused was that of alibi. That at the time, to-wit, between five minutes before six o'clock and thirty minutes after six of the afternoon of Saturday, the 5th day of April, 1884, he was, all of the time, in the dining-room of William Ince's restaurant. This is sworn to by four witnesses; and it seems to me that while this defense rested entirely upon the accuracy of the restaurant clock, and the fact that it had not been tampered with on the evening in question, yet, those two propositions granted, the alibi was as fully proven as well as could be. Yet there was conflicting evidence. One witness, who carried a watch and had occasion to consult it with reference to taking his wife to supper at the hotel, and did consult his watch at the very time in question, swears positively to having seen the accused on the street near the scene of the larceny about the time when the larceny must have been committed, at the time when the other four witnesses swear to his having been on the

sofa playing with Mrs. Ince's children in the restaurant. In such cases it is the province of the jury, and always a disagreeable and unwelcome duty, to decide which statement is the truth. And in arriving at this decision many other things beside the relative number of witnesses on either side may be considered by them, and when their finding follows the consistent evidence of one intelligent and unimpeached witness it cannot be said to be unsustained by the evidence.

In passing upon the prisoner's defense of alibi I think the jury had the right to consider all the evidence in the case; that of the finding of a part of the stolen property on the person of the accused in a shop where stolen property of that description is usually disposed of, in a distant city, nine days after the robbery, as well as that confined to his actual presence at the restaurant on the one hand, or on the street near the scene of the larceny on the other near the precise point of time when the larceny must have been committed. And looking at the whole of the evidence, I think that the verdict is not only sustained by the evidence, but for the jury to have found otherwise would have been to ignore both reason and the teachings of experience.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.