## HARRY HILL v. STATE OF NEBRASKA.

FILED NOVEMBER 8, 1894.    No. 6832.

1. **Murder: INFORMATION: ELECTION AS TO COUNTS. In one** count of the information for murder the accused was charged with having purposely, and of his deliberate and premeditated malice, killed the deceased, and in two other counts the killing is alleged to have been done in an attempt to rob the deceased. *Held*, To charge but one offense, and a motion to require the state to elect between the several counts of the information was properly overruled. (*Furst v. State*, 31 Neb., 403.)

2. ———. The law does not distinguish between principals of the first and second degree; hence, all persons who, being present, aid, assist, or abet in the commission of a felony may be prosecuted as principals.

3. ———: PRELIMINARY EXAMINATION: PLEA IN ABATEMENT. Objection by an accused on the ground that there has been no preliminary examination for the crime charged should be by a plea in abatement. (*Cowan v. State,* 22 Neb., 519.)

4. ———: SUFFICIENCY OF COMPLAINT. Complaint, upon which the accused was committed, examined, and *held* to state the crime charged in the information filed in the district court.

5. ———: RULINGS ON EVIDENCE: REVIEW. In reviewing the rulings of the trial court in receiving and rejecting evidence this court will confine its examination to the objections made at the trial. (*Schlencker v. State*, 9 Neb., 241.)

6. ——: JUROR: CHALLENGE: SCRUPLES AGAINST CAPITAL PUN-
ISHMENT. The provision of the Criminal Code making consci-
entious scruples of a juror against capital punishment ground of
challenge for cause in prosecutions for murder was not repealed
by the amendment of 1893, conferring upon the jury discretion
to fix the punishment, upon conviction for murder in the first
degree, at imprisonment for life instead of the death penalty.

7. ——: AFFIDAVITS FOR NEW TRIAL: REVIEW. Affidavits after
verdict, contradicting the answers of a juror on his *voir dire* ex-
amination for the purpose of proving disqualification on account
of prejudice against the unsuccessful party, should be received
with caution, and when contradicted, an order denying a new
trial will not be reversed on appeal.

8. ——: PROOF OF INTOXICATION AS DEFENSE: INSANITY.
Proof of voluntary intoxication is admissible in prosecutions for
murder in the first degree, not to excuse the crime charged, but
as a circumstance tending to show that the killing was not the
deliberate and premeditated act of the prisoner. Where, how-
ever, continued drunkenness has produced such a condition of
insanity or imbecility as would relieve from responsibility for
criminal acts if produced by any other cause, such condition
may be shown as a defense, and the fact that it was caused by
voluntary drunkenness is immaterial.

9. ——: TRIAL: CROSS-EXAMINATION OF WITNESS. The limits
within which cross-examination will be allowed respecting the
past life of a witness other than the defendant in a criminal
prosecution, for the purpose of affecting his credibility, rests in
the discretion of the trial court. Accordingly, *held* not error to
permit a witness for the defendant to be asked on cross-examina-
tion if he had been arrested for vagrancy, drunkenness, and
other misdemeanors.

10. ——: ——: CHARGE: REVIEW. A judgment will not be
reversed because the trial court in a prosecution for murder has,
in charging the jury, assumed material facts as proved, where it
is clearly shown by the record that they were admitted by the
prisoner at the trial or treated by him as proved.

11. ——: ——: ——. The trial court should avoid the giving
of undue prominence to a particular proposition by frequent
repetitions thereof in charging the jury; but a violation of that
rule in a criminal prosecution is not of itself reversible error,
where it is apparent that there was no controversy respecting the
proposition stated, and where it is clear that it did not have the

effect to exclude from the consideration of the jury other propositions stated by the court.

12. ———: ———: ———. Where in a criminal case the trial court has correctly charged upon all of the questions presented at the trial, the fact that a single proposition might have been stated with greater precision in a single paragraph is no ground for reversal, particularly where the instructions given are a substantial compliance with the requests presented by the prisoner.

13. Robbery. It is not essential to the crime of robbery that the property be taken from the body of the person robbed. It is sufficient if taken from his personal presence or personal protection.

14. Trial: IMPROPER REMARKS OF COUNSEL: EXCEPTIONS. Abuse of privilege by counsel in addressing the jury, to be available on appeal, must be excepted to at the time. (*McLain v. State*, 18 Neb., 154.)

15: ———: ———: ———. But that rule has no application to the trial court. It is the duty of the presiding judge, whether so requested or not, to protect the court by an enforcement of the rules essential to an orderly and impartial administration of the law; and should an attorney persist in attempting to influence the jury by reference to facts not in evidence, or appeals to prejudice unwarranted by the proofs, the court should not hesitate, on motion, to set aside a verdict in his favor, although no objection may have been interposed when the offense was committed.

16. Murder: SUFFICIENCY OF EVIDENCE TO SUPPORT CONVICTION. Evidence examined, and *held* to sustain the verdict of murder in the first degree and to warrant the extreme penalty imposed by the jury.

ERROR to the district court for Cass county. Tried below before CHAPMAN, J.

The facts are stated in the opinion.

*Matthew Gering,* for plaintiff in error:

The motion to quash the information upon which the prisoner was tried should have been sustained, being based upon the following grounds: (*a*) Because such information charges separate and distinct crimes punishable by different

penalties; (*b*) because no preliminary hearing upon the charge contained in the information was given the accused; (*c*) under the existing laws of this state no such crime as aiding and abetting in the commission of murder in the first degree is cognizable. (Consolidated Statutes, secs. 5577, 5579; *White v. State*, 28 Neb., 341; *State v. Maccuaig*, 8 Neb., 215; *Albertson v. State*, 9 Neb., 429; *Marion v. State*, 16 Neb., 350; Maxwell, Criminal Procedure, 498; *Hanoff v. State*, 37 O. St., 178; *Walrath v. State*, 8 Neb., 80.)

The statement of a juror that he is not in favor of capital punishment is not alone sufficient to justify an order sustaining a challenge for cause. (Wharton, Criminal Practice, secs. 664, 665; 1 Bishop, Criminal Procedure, secs. 852–918; Consolidated Statutes, secs. 5207, 6096; *Commonwealth v. Webster*, 5 Cush. [Mass.], 295; *Williams v. State*, 32 Miss., 389; *People v. Stewart*, 7 Cal., 140; *State v. Arnold*, 12 Ia., 479; *Commonwealth v. Buzzell*, 16 Pick. [Mass.], 153; *State v. Dooley*, 57 N. W. Rep. [Ia.], 415; *Spain v. State*, 59 Miss., 19; *Bradshaw v. State*, 17 Neb., 147.)

The examination of Harvey showed that he was qualified to act as a juror; and the challenge as to him for cause should have been overruled. (Constitution, sec. 7, art. 1; *Keener v. State*, 18 Ga., 194; *Graham v. State*, 13 S. W. Rep. [Tex.], 1011; *Hanks v. State*, 21 Tex., 526; *Henrie v. State*, 41 Tex., 573; *Sewell v. State*, 15 Tex. App., 56; *Chartz v. Territory*, 32 Pac. Rep. [Ariz.], 166; *People v. Plummer*, 9 Cal., 310; *State v. Burnside*, 37 Mo., 347; *Busick v. State*, 19 O., 198.)

An expression by a juror before trial that he believes the accused guilty, if unknown to defendant or counsel, constitutes a ground for a new trial. (*State v. Phillips*, 22 S. W. Rep. [Mo.], 1079; *State v. Burns*, 85 Mo., 47; *Washburn v. State*, 20 S. W. Rep. [Tex.], 715; *State v. Carter*, 25 W. L. B. [O.], 17; *State v. Cleary*, 19 Pac. Rep.

[Kan.], 780; *United States v. Christiensen*, 24 Pac. Rep. [Utah], 618.)

Opinions of neighbors and acquaintances of the prisoner, who form their opinion of the condition of his mind from seeing him frequently, are entitled to great weight. (Maxwell, Criminal Procedure, 230; *Schlencker v. State*, 9 Neb., 251; *Grant v. Thompson*, 4 Conn., 203; *Clark v. State*, 12 O., 483; *State v. Klinger*, 46 Mo., 224; *Choice v. State*, 31 Ga., 424; *Shults v. State*, 37 Neb., 498.)

It was error for the court to permit, over defendant's objection, an inquiry as to whether the witness had ever been arrested. (*Langhorne v. Commonwealth*, 76 Va., 1012; *People v. Brown*, 72 N. Y., 571; *Farley v. State*, 57 Ind., 331; *Hanoff v. State*, 37 O. St., 180; *People v. Crapo*, 76 N. Y., 288.)

It is error to overrule objections to hypothetical questions assuming the existence of necessary elements of conviction. (*Haish v. Payson*, 107 Ill., 370; *Bishop v. Spining*, 38 Ind., 144; Thompson, Trials, sec. 606; *Hathaway v. National Life Ins. Co.*, 48 Vt., 336; *Ballard v. State*, 19 Neb., 609.)

Inflammatory language used by the prosecuting attorney in his address to the jury is reversible error, and a new trial ought to be granted by the higher tribunal, even if no objection is made by the accused, since it is the duty of the trial court to either interfere at the time or give a charge upon the impropriety of such conduct. (1 Bishop, Criminal Procedure, sec. 975; *Ferguson v. State*, 49 Ind., 33; *State v. Underwood*, 77 N. Car., 502; *Hatch v. State*, 8 Tex. App., 416; *Schlencker v. State*, 9 Neb., 300; *Rakes v. People*, 2 Neb., 157; *Smith v. State*, 4 Neb., 290; *Walrath v. State*, 8 Neb., 80.)

An instruction which declares the existence of certain facts is erroneous, as invading the province of the jury. (*Helot v. State*, 20 Neb., 492; Bishop, Criminal Procedure, 979; *Smathers v. State*, 46 Ind., 447; *Bond v. People*, 39 Ill., 26; *Herges v. State*, 30 Ala., 45.)

If there is evidence that the accused was intoxicated when the crime was committed, the jury may consider the evidence of intoxication as a circumstance to show that the act was not premeditated and to rebut the idea that it was done in a cool and deliberate state of mind necessary to constitute murder in the first degree. (*Smith v. State*, 4 Neb., 278; *Schlencker v. State*, 9 Neb., 242; *Nichols v. State*, 8 O. St., 435; *Roberts v. People*, 19 Mich., 401; *People v. Harris*, 29 Cal., 678; Maxwell, Criminal Procedure, 227; *Wood v. State*, 34 Ark., 341.)

To refuse or fail to instruct upon one fact testified to even by the accused, which would mitigate or excuse the offense, is reversible error. (*McElvoy v. State*, 9 Neb., 157; *State v. Trivas*, 36 Am. Rep. [La.], 296; *O'Grady v. State*, 36 Neb., 320; *People v. Rogers*, 18 N. Y., 9; *Shannahan v. Commonwealth*, 8 Bush [Ky.], 463.)

The accused having offered some evidence to show the existence of dipsomania, the burden was on the state to prove sanity beyond a reasonable doubt. The failure to give the instructions upon that subject requested by defendant was error. (*Wright v. People*, 4 Neb., 409; *Ballard v. State*, 19 Neb., 610; *Beers v. State*, 24 Neb., 615; *Pigman v. State*, 14 O., 555; *State v. White*, 14 Kan., 538; *State v. Tatro*, 50 Vt., 483; *Cluck v. State*, 40 Ind., 263.)

If the jury occupied separate apartments it is ground for a new trial. (*Goersen v. Commonwealth*, 106 Pa. St., 477.)

*George H. Hastings, Attorney General*, and *H. D. Travis, County Attorney*, for the state:

The motion to quash the information was properly overruled. (*Cowan v. State*, 22 Neb., 519; *Glover v. State*, 109 Ind., 391; *Andrews v. People*, 117 Ill., 195; *Cox v. State*, 80 N. Y., 500; *Furst v. State*, 31 Neb., 403.)

An election is only required where separate and distinct offenses, not a part of the same transaction, are charged in the same information, and the prosecution in this case was

not obliged to elect upon which count it would rely. (*Harts-horn v. State,* 29 O. St., 635; *Alderman v. State,* 24 Neb., 97; *Stephens v. State,* 42 O. St., 150.)

Again, the objection to the whole information will not prevail if there be one good count, because an indictment which contains a sufficient allegation to charge an offense will not be impaired by other allegations which are immaterial or redundant. (*State v. Longley,* 10 Ind., 482; *State v. Noyes,* 30 N. H., 279; *Jillard v. Commonwealth,* 26 Pa. St., 169.)

It is a well settled rule that where there are two or more persons to be charged with an offense, the pleader may charge the act to have been done by said persons collectively. (*State v. Palmer,* 4 Mo., 454; *Bailey v. State,* 4 O. St., 440; *State v. Johnson,* 37 Minn., 493; *People v. Garcia,* 58 Cal., 102; *Commonwealth v. Andrews,* 132 Mass., 263; *State v. Rust,* 35 N. H., 438.)

The order sustaining the challenge to the juror on account of his conscientious scruples against capital punishment was proper. (*Caldwell v. State,* 41 Tex., 86; *People v. Tanner,* 2 Cal., 257; *State v. Melvin,* 11 La. Ann., 535; *Driskill v. State,* 7 Ind., 338; *Greenley v. State,* 60 Ind., 141; *St. Louis v. State,* 8 Neb., 405; *Bradshaw v. State,* 17 Neb., 147.)

The rulings in reference to the challenge and prejudice of juror Harvey were without error. (*Tomer v. Densmore,* 8 Neb., 384; *Palmer v. People,* 4 Neb., 75; *Clough v. State,* 7 Neb., 320; *Murphy v. State,* 15 Neb., 383; *Gandy v. State,* 27 Neb., 707.)

POST, J.

The plaintiff in error was at the December, 1893, term of the district court for Cass county convicted of murder in the first degree, the penalty fixed by the jury being death by execution, and which he now seeks to reverse by means of a petition in error addressed to this court. In the first

count of the information the plaintiff in error and one Benwell were jointly charged with killing the deceased, Mat. Akeson, purposely and of their deliberate and premeditated malice. In the second count the plaintiff in error is charged with murder while engaged with Benwell, his codefendant, in an attempt to rob the deceased. And in a third count both defendants are charged with murder while attempting to rob the deceased. The plaintiff in error moved to quash the information, assigning as grounds therefor in his motion:

" First—That the information charges two distinct and separate causes under the laws of this state.

" Second—Because said information charges separate and distinct offenses under the laws of this state.

" Third—Because such information charges the defendant with the crime of aiding and abetting in the commission of a murder in the first degree, and that no such offense is known to the laws of this state, and that the defendant was not given a preliminary hearing upon the charge contained in the information.

"Fourth—That the information is not verified as required by law.

" Fifth—That the information charges different crimes than set out in the complaint."

The motion to quash having been overruled, an exception was taken by the plaintiff in error, and which is the ruling first complained of.

1. The first and second reasons assigned in the motion are substantially the same, and will be considered together. The offense charged in the several counts of the information is evidently the same, viz., the felonious killing of the deceased, Mat. Akeson. It is in such cases permissible for the state to charge the offense in different forms in order to anticipate any variance between the allegations and the proofs. That question was fully considered by this court in *Furst v. State*, 31 Neb., 403, and the conclusion therein reached must be regarded as decisive in this case.

Hill v. State.

2. To the third ground of objection to the information a sufficient answer is, that the plaintiff in error is not charged as an accessory. It is in each count alleged that he was present at the time of the assault and personally inflicted upon deceased a mortal wound from which he, deceased, "then and there died." Section 1 of our Criminal Code is declaratory merely of the common law rule by which an accessory before the fact is defined as one who aids, abets, procures, or commands another to commit a felony in his absence. (1 Russell, Crimes and Misdemeanors, 49*; Stephen, Criminal Digest, 24.) Those who, being present, aided and abetted in the commission of a felony were principals in the second degree. ( *Walrath v. State*, 8 Neb., 80.) We cannot construe the information as charging the plaintiff in error with the mere aiding and abetting in the killing of Akeson; but, granting such to have been the intention of the pleader, the effect is the same, since the law does not distinguish between principals in the first and second degrees. (2 Bishop, Criminal Procedure, 3.)

3. The next ground relied upon is that the crime charged in the information is not the one named in the complaint, and for which the plaintiff in error was held to answer. That question, it was said in *Cowan v. State*, 22 Neb., 519, should be raised by a plea in abatement and not by motion to quash; but, in view of the gravity of the issues here presented, we have examined the record of the magistrate, and find that two complaints were lodged with him, in one of which both defendants are charged as principals, and in the other each is charged as principal with the other as present, aiding and assisting, and evidently referring to the crime charged in the information. It follows that no sufficient ground was alleged for the quashing of the information and that the court did not err in overruling the motion.

4. It is next claimed that the court erred in refusing to

require the state to elect between the several counts of the information. That claim is, however, without merit, since, as we have seen, there is but one crime charged. It is only when separate and distinct offenses, growing out of different transactions, are charged in the same indictment that the state will be required to elect. (*Furst v. State*, 31 Neb., 403; *Alderman v. State*, 24 Neb., 97; *Aiken v. State*, 41 Neb., 263.)

5. At the request of the plaintiff in error he was allowed a separate trial, during the course of which numerous exceptions were taken and which will be noticed in their order. George McReynolds, a member of the regular panel, being called as a juror was interrogated as follows: " Q. I will ask you to state if you now have any such opinion in your mind as would prevent you from finding the defendant ₊guilty of murder if such would be proven upon the trial." To which he answered: "I am. not in favor of capital punishment." He was thereupon challenged for cause by the state, which challenge was sustained, and is now assigned as error. It is argued by counsel for the accused that the juror's objection to capital punishment may have referred to the policy or expediency thereof, and did not necessarily imply any such conscientious scruples against the death penalty as would disqualify him to serve in this prosecution. But an examination of the record discloses the fact that the objection to the challenge rests upon entirely different grounds, viz., that death, under the Criminal Code as amended in 1893, is not the necessary penalty for murder in the first degree. Since the question argued is not presented by the objection, it is not deserving of further notice in this opinion.

6. It was not error to permit examination of jurors by the state touching their sentiments with respect to capital punishment. The amendment of 1893, conferring upon juries discretion to fix the punishment in case of conviction for murder in the first degree at imprisonment for life in-

stead of the death penalty, did not repeal the provision of the Criminal Code making conscientious scruples against capital punishment in certain cases ground of challenge for cause. The precise question was presented in *Caldwell v. State,* 41 Tex., 86, and *People v. Tanner,* 2 Cal., 257, and we are entirely satisfied with the views therein stated. (See, also, *State v. Melvin,* 11 La. Ann., 535; *Driskill v. People,* 7 Ind., 338; *Greenley v. State,* 60 Ind., 141). And the principle upon which the above decisions rest was recognized by this court also in *St. Louis v. State,* 8 Neb., 405, and *Bradshaw v. State,* 17 Neb., 147.

7. C. A. Harvey, who was accepted as a juror, testified upon his *voir dire* examination that he had no opinion with respect to the guilt or innocence of the accused, and was entirely free from bias or prejudice against him. Affidavits were subsequently filed tending to prove that the juror named had previously stated that the accused "ought to be hanged," that he was "in favor of hanging him," etc.; but unfortunately for the accused that showing was not made until after judgment and after the final adjournment of the term at which it was rendered; nor does it appear that the attention of the district court was ever directed to the affidavits mentioned, or a ruling asked upon the showing therein made. It is a settled rule of this court that alleged errors will be disregarded unless called to the attention of the trial court and a ruling had thereon. (See *Roode v. Dunbar,* 9 Neb., 95.) But counsel argue that in capital cases the appellate court should not refuse to interfere where the judgment appears to be unjust, on account of any negligence of the prisoner, since to permit him to waive a substantial right is contrary to the enlightened spirit of the law as well as the dictates of humanity. A consideration of that question is, however, unnecessary, since assuming, as we are asked to do, that objection, on account of the disqualification of the juror, was in due season presented to the district court and a ruling had thereon

37

adverse to the accused, there is still no sufficient reason
suggested for interference on that ground. While it is the
duty of the district court in a proper case to grant a new
trial on account of the prejudice of a single juror discovered
after verdict, evidence in support of such an objection
should be received with great caution, for, as said by Judge
Thompson (Thompson, Trials, 117), "otherwise, as soon as
a verdict is rendered, another trial, to-wit, of the jurors, will
begin." It follows, also, that such evidence should be care-
fully scrutinized, and when conflicting, the decision denying
a new trial will not be disturbed on appeal. In *Spies v.
People*, 122 Ill., 1, it is declared to be "a dangerous practice
to allow verdicts to be set aside upon *ex parte* affidavits as
to what jurors are claimed to have said before they were
summoned to act as jurymen. The parties making such
affidavits submit to no cross-examination, and the correct-
ness of their statements is subject to no test whatever."
(See, also, *Clem v. State*, 33 Ind., 418; *State v. Bancroft*,
22 Kan., 170; *Lamb v. State*, 40 Neb., 312; *Costly v. State*,
19 Ga., 614; *Lamb v. State*, 41 Neb., 356.) In this in-
stance the juror named in an affidavit filed by the state tes-
tified that he had never expressed any such sentiments as
attributed to him in the affidavits first mentioned, and ex-
plicitly denied the statements therein alleged, which brings
the case clearly within the rule recognized in the authori-
ties cited.

8. A witness for the accused, Isaac Frankenfield, testi-
fied by deposition to having served with the former in the
United States army for nearly three years immediately pre-
ceding the month of November, 1891, and that he, accused,
was, during the period of his service, constantly under the
influence of liquor when able to procure it; that he was a
confirmed drunkard, and had been dishonorably discharged
after having served a term in the military prison at Leaven-
worth for an offense committed while intoxicated. At that
point, on the objection of the state, the following questions

and answers were excluded as incompetent, irrelevant, and immaterial, and which ruling is assigned as error:

"When under the influence of liquor to such an extent as you have repeatedly seen him, what would you say, with your knowledge of his temperament, was his ability to rationally design, premeditate, and deliberate upon the usual affairs of life?

"In my opinion drinking seemed to take away his senses. I think he, when under the influence of liquor, did not have the ability to rationally design, premeditate, and deliberate upon anything.

"When under the influence of liquor, as you have repeatedly seen him, what would you say as to his ability to distinguish between right and wrong?

"I think when the man was drinking he was so far gone that he did not know right from wrong.

"When in this condition under the influence of whiskey or alcohol what would you say was the condition of his mind, sane or insane?

"My opinion is that the man was perfectly insane when he was drinking."

Much has been said and written upon the subject of drunkenness as a defense which tends to confuse rather than to elucidate the subject. Perhaps no more satisfactory statement of the rule is to be found than the charge of Stephen, J., in *Reg. v. Davis*, 14 Cox, Criminal Cases [Eng.], 564, viz.: "Drunkenness is one thing and the diseases to which drunkenness leads are different things; and if a man, by drunkenness, brings on a state of disease which causes such a degree of madness, even for a time, which would have relieved him from responsibility if it had been caused in any other way, then he would not be criminally responsible. In my opinion, in such a case, the man is a madman and is to be treated as such, although his madness is only temporary. If you think he was so insane that, if his insanity had been produced by other causes, he would not be re-

sponsible for his actions, then the mere fact that it was caused by drunkenness will not prevent it having the effect, which otherwise it would have had, of excusing him from punishment." And to the same effect see 1 Bishop, Criminal Law, sec. 406. It will be observed that the answers rejected do not prove that the mental faculties of the accused had been in any degree impaired by the use of liquor. They tend merely to prove what is an obvious fact of which all men will take notice without proof, viz., that the mind which is temporarily obscured or inflamed from the excessive use of intoxicants is incapable of reasoning rationally, the extent of the incapacity depending upon the degree of intoxication. The law recognizes a wide distinction between those cases where the mental derangement results from voluntary periodical intoxication, and the condition of insanity or imbecility produced by protracted overindulgence in the use of liquor. Drunkenness in the first class of cases is never, strictly speaking, a defense, although generally admissible as bearing upon the question of intention where the crime charged includes a specific intent. (See 1 Bishop, Criminal Law, 408 *et seq.; Schlencker v. State*, 9 Neb., 241; *Roberts v. People*, 19 Mich., 401; *People v. Cummins*, 47 Mich., 334; *Cluck v. State*, 40 Ind., 263; *Fisher v. State*, 64 Ind., 435; *Pigman v. State*, 14 O., 555; *Cline v. State*, 43 O. St., 332; *People v. Harris*, 29 Cal., 678.) But as the rulings upon that branch of the case must be considered under another assignment, they do not call for further notice in this connection. To summarize briefly, in the absence of evidence tending to show any degree or form of insanity as distinct from the effect of intoxication, which was, according to the testimony of the accused, voluntarily produced on the day of the homicide, the testimony above set out was properly excluded.

9. One Fair, a witness for the accused, testified to having known the latter intimately in Omaha and elsewhere, and that he drank to excess continuously from May 1 until

July 20 preceding the homicide, which occurred on the 1st day of November, 1893.  On cross-examination the state was permitted, over the objection of the accused, to inquire if the witness had been arrested for vagrancy, drunkenness, and other misdemeanors.  As respects the limits within which a witness other than the prisoner may be cross-examined for the purpose of testing his credibility the authorities are not harmonious ; but the prevailing opinion is thus stated by Judge Thompson (Thompson, Trials, 458): "Except in cases where the witness is the prisoner on trial, the extent to which an inquiry will be allowed in his past life with a view of affecting his credibility rests in the discretion of the trial court."  In *Real v. People,* 42 N. Y., 270, a well considered case, referring to questions of the character here involved, it is said: "Such inquiries do not relate to the issue directly upon trial, but relate only to the credibility of the witness.  They are entirely collateral to the principal issue.  As to the former, the same strictness is not required when the evidence is confined to the cross-examination of the witness introduced by the opposite party.  In such examination the presumption is strong that the witness will protect his credibility as far, at least, as truth will warrant.  All experience shows this to be so. It would be productive of great injustice often, if where a witness is produced, of whom the opposite party has before never heard, and who gives material testimony, and from some source, or from the manner and appearance of the witness, such party should learn that most of the life of the witness had been spent in jails and other prisons for crimes, ·if this fact could not be proved by the witness himself, but could only be shown by records existing in distant counties, and perhaps states, which, for the purposes of the trial, are wholly inaccessible.  No danger to the party introducing the witness can result from this class of inquiries, while their exclusion might, in some cases, wholly defeat the ends of justice."  And the rule as thus stated is recognized

in the following cases: *People v. Court of Oyer*, 83 N. Y., 436; *Wroe v. State*, 20 O. St., 460; *Bank of Cadiz v. Slemmons*, 34 O. St., 142; *State v. Carson*, 66 Me., 116; *People v. Arnold*, 40 Mich., 710; *State v. O'Brien*, 81 Ia., 93. It does not follow, however, that a witness will in every case be required to answer questions the tendency of which is to subject him to public disgrace or infamy; but that question is foreign to the present inquiry. It is sufficient for present purposes that the right to object, if such right exists, belongs to the witness whom it is sought to discredit, and not to the party calling him. (1 Greenleaf, Evidence, 459.)

10. Exception was taken, among others, to the eleventh paragraph of the instructions given by the court on its own motion as follows:

"No. 11. Gentlemen of the Jury: The evidence in this case shows, without conflict, that on the night of the 1st day of November, 1893, two persons entered the home of the deceased, Mattes Akeson, in Cass county, Nebraska, and without cause or provocation on the part of said deceased, or any of his family or servants there assembled, made a murderous assault upon the said deceased and the inmates of his home, shooting to death the said Mattes, also shooting at and striking his son Thomas, and shooting and wounding his hired men, Peter Simeon and Gus Burke, and beating, bruising, and wounding Rebecca Akeson, the wife of the deceased. That this assault was without provocation on the part of the deceased and the inmates of his home seems to be clear and undisputed from the evidence. The state contends that said crime was committed with premeditation and deliberation in an attempt to rob the deceased and the inmates of his home. The defendant Harry Hill, who stands charged before you in the information with the crime of murder, has entered a denial to said charge and pleads not guilty to the information. You are, therefore, charged that the burden of proof is upon the

part of the state to establish the guilt of this defendant upon this trial, by competent evidence and beyond any reasonable doubt. Therefore, in this case the prosecution must make out and prove to the satisfaction of the jury beyond all reasonable doubt every material allegation in the information, and unless that has been done the jury should find the defendant not guilty. In other words, in order to warrant a conviction in this case of the crime charged in the information, it is necessary for the state to satisfy you, gentlemen of the jury, that the defendant, together with one John Benwell, on or about the 1st day of November, 1893, within the county of Cass and state of Nebraska, made an assault upon the deceased in manner and form as charged in the information, with a revolver loaded with powder and ball, and that said Harry Hill or John Benwell, with malice aforethought, then and there shot the deceased, inflicting on him a mortal wound of which he then and there died, and that the other one of said defendants, either Harry Hill or John Benwell, was then present, aiding, abetting, and assisting in said assault and in said manner."

The objections to the above are: First, the assumption therein of the alleged homicide and accompanying assault on the deceased and other members of his family; second, that the reference therein to an assault upon the wife of the deceased is entirely unwarranted by the evidence. In *Heldt v. State*, 20 Neb., 492, it was held error to assume the existence of a fact in issue in a criminal prosecution, even where there is no conflict in the evidence, on the ground that it is for the jury to judge of the credibility of the witnesses. Mr. Bishop, in his work on Criminal Procedure (vol. 1, 979), after stating his views in substantially the language used in the case cited, concludes as follows: " The judge, therefore, should not assume a fact as proved unless the parties in the course of the trial have treated it so, and then he may." The facts assumed in this case, as will be

observed from a careful reading of the instruction, are that an unprovoked assault was made by two persons upon the deceased and his family, by means of which the former was killed. From an examination of the record the conclusion is irresistible that the defense was conducted on the theory that the accused had in fact assaulted and killed the deceased as charged and as proved by the state, but that he was at the time, in legal effect, insane from the excessive use of liquor. In the majority of the thirty-eight instructions asked by him the killing and the assault are assumed, while from none of them do those allegations appear to have been controverted. Again, we find in the brief of the accused filed in this court the following statement: "The commission of the crime was not denied, the only contention upon the part of the defense being an entire absence of any of the elements constituting homicide in the first degree; and further, that the defendant Hill had been in the habit of using liquor to such excess as to make him incapable of rationally designing the life of a fellow man and suffering from dipsomania." The court was, therefore, warranted in assuming the commission both of the assault and the homicide. Nor is the accused more fortunate in his second objection, as the record clearly proves that the wife of the deceased was struck with a chair by one of the assailants of her husband.

11. The criticism directed against the twelfth, thirteenth, and fourteenth instructions is twofold : First, that too much prominence is therein given to the proposition that drunkenness is no excuse for crime; and second, that they leave to the jury no discretion, but require them either to acquit the accused or find him guilty of murder in the first degree. Said instructions are here set out:

"No. 12. One of the defenses interposed in this case to the charge of murder contained in the information is that the defendant was under the influence of intoxicating liquor at the time of the killing, to such an extent as to be

unable to distinguish between right and wrong, and had been, for a considerable period of time immediately preceding the killing, intoxicated and under the influence of intoxicating drinks to such an extent as to be incapable of forming in his mind a design, deliberately and premeditately, to do the act charged in said information. This, you are instructed, is the defense of insanity caused by the excessive use of alcoholic stimulants, and when established by competent evidence, is an excuse for the commission of crime, for, if one committing a felony is found to be insane, from any cause, at the time he does the unlawful act, such insanity would be a complete defense if interposed in his behalf. You are, however, further instructed, touching the defense of drunkenness, that, as a rule of law, voluntary intoxication is no excuse for crime committed under its influence, and that to excuse the commission of a crime, or in a case like the one now on trial before you, where deliberation and premeditation are elements charged in the information, to be available as a defense or excuse, the evidence of drunkenness or intoxication at the time of the killing should be sufficient to raise in the minds of the jury a reasonable doubt as to whether the defendant or person charged with crime was capable of forming in his mind, before the killing, a willful, deliberate, and premeditated design to take the life of another, and that in cases where drunkenness is interposed as a defense, before the same can be considered there should be evidence in support of such defense sufficient to create a reasonable doubt in the minds of the jury of the accused's ability to distinguish between right and wrong at the time of the commission of the crime charged. So, in this case, you are instructed that if the evidence on this branch of the case is not strong enough, or is insufficient to create a reasonable doubt in your minds of the ability of the defendant Harry Hill to form the design and purpose to kill the deceased, such defense should be disregarded by the jury. In considering this branch of the

case you should take into consideration all of the testimony admitted before you tending to establish such insanity or drunkenness; the length of time the defendant was known in the neighborhood where the crime was committed, immediately preceding the homicide; his condition during that time as regards soberness and sanity or insanity, if any such be shown by the evidence; whether he was intoxicated or under the influence of intoxicating liquors during such time, if such fact appear from the evidence; his mental condition during that time, if such be shown from the evidence; his habits and life, so far as alcoholic stimulants are concerned, by his conduct; and it is from all such facts as they appear from the evidence, together with all other evidence tending to show his mental condition at and preceding the homicide, that you are to arrive at your verdict on this branch of the case.    In this connection, however, you should bear in mind that under our law voluntary drunkenness, is no excuse for the perpetration of crime, and that where without intoxication the law would impute a criminal intent, mere proof of drunkenness will not avail to disapprove such intent, and that it is only in cases where the constant and excessive use of alcoholic stimulants have produced actual insanity, resulting in derangement of the mental and moral faculties to such an extent as to render the person so afflicted incapable of distinguishing right from wrong, that crime may be excused thereby.

"No. 13. Another rule of law which I now remind you of, in connection with this defense of insanity caused by drunkenness or excessive use of alcoholic stimulants, is that the law presumes every man who has reached the years of discretion to be of sound mind, and this presumption continues until arrested by evidence tending to establish insanity, which evidence should be sufficient, as I have hereinbefore instructed you, as to raise in the minds of the prudent, careful juror a reasonable doubt of the sanity of the accused. When, however, evidence of insanity has been

introduced, the burden of proof is upon the state to satisfy the jury, by competent evidence beyond any reasonable doubt, that the accused was possessed of a sound mind at the time he committed the act complained of. You should bear in mind, gentlemen, however, that the burden of proof in criminal cases is always upon the state, and never shifts from the state to the defendant; that is, the making out of a *prima facie* case against the defendant does not shift the burden of proof to the defendant; in such a case it is only necessary for the defendant to offer proof sufficient to create in the minds of the jury a reasonable doubt of his guilt. In this connection, however, you are further instructed that if a person voluntarily becomes intoxicated with a view of committing a crime, and while so intoxicated commits the crime, that total insanity, if the immediate result of such intoxication, would not excuse the criminal act committed while under the influence of such intoxication, for the law will not permit a person to so shield himself under the cloak of drunkenness for the purpose of violating the law of the land.

"No. 14. Further, you are instructed upon this branch of the case, in regard to the question of intoxication as a defense or as an excuse, partial or whole, for the crime, that if the person is sober enough and has mind enough to form a design to take the life of another, and in pursuance of such design does actually shoot and kill without any justification therefor, then the law presumes that such person is sober enough and of sufficient mind to form the specific intention to kill; and in such case, where he attempts to take life or does take life, he is criminally responsible for his acts; so, where there is evidence in such cases of insanity or loss of reason on account of the intoxication and drunkenness of the person committing the felony, the degree of intoxication and the fact itself is a question of fact for the jury to weigh with all other evidence in the case; hence, in this case, the question as to whether the ac-

cused was intoxicated at the time of the shooting and be-
fore, and to what extent, is a question of fact for you, gen-
tlemen of the jury, to determine from all the evidence
before you bearing upon that question ; and if, after fully
and impartially weighing and considering the same, you
entertain a reasonable doubt of the guilt of the accused as
defined by these instructions, it becomes your duty as jurors
to give the defendant the benefit of such doubt, and acquit
him of the crime charged in the information.   If, on the
other hand, after examining and weighing all the evidence
bearing upon the question of the defendant's intoxication,
together with all other evidence in the case, you are con-
vinced beyond any reasonable doubt of the defendant's
guilt as he stands charged in the information—that is, that
the defendant Harry Hill, or John Benwell, with malice
aforethought, shot the deceased, and thereby inflicted upon
him a mortal wound of which he then and there died, in
manner and form as charged in the information, and that
said Hill, or said Benwell, as you may find from the evi-
dence beyond any reasonable doubt, was present, aiding,
abetting, and assisting in commission of said felony,—then
you are instructed that it is your duty to return a verdict
of guilty as said defendants stand charged in the informa-
tion."

The repetition complained of presents no ground for re-
versal.   It is, at most, an irregularity—a practice to be
discouraged for obvious reasons; but it cannot in this in-
stance be said to have excluded from the consideration of
the jury other propositions of law stated by the court, since,
as we have seen, there appears to have been no controversy
at the trial with respect to the rule stated in the instructions.
Murder in the first degree, murder in the second degree,
and manslaughter were fully and accurately defined in
other paragraphs of the charge.   The jury were also ad-
vised that they were not required to return a verdict of
murder in the first degree should they find that the accused

feloniously killed Mat. Akeson as charged, but that, if warranted by the evidence, they should return a verdict of murder in the second degree or manslaughter. We have seen that proof of drunkenness, although voluntary, is admissible as bearing upon the question of intention where a specific intent is an element of the crime charged. For instance, in prosecutions for murder in the first degree, which implies both malice and premeditation, the intoxication of the accused may be considered for the purpose of determining whether he was at the time in question capable of deliberation or of deciding between right and wrong and judging of his acts and their legitimate consequences; in short, for the purpose of showing the degree of the offense, if any, which has been committed. (*O' Grady v. State*, 36 Neb., 320.) Such, we understand, to be the doctrine of the instructions under consideration, and although the rule is not stated therein with the clearness and precision noticeable in the other paragraphs of the charge, we are unable to determine that the accused has been prejudiced thereby. We are confirmed in that view from the fact that the instructions above set out are, in substance, identical with those asked by the accused. Mere non-direction by the trial court is not sufficient ground for reversal on appeal, unless proper instructions have been asked and refused. That rule rests upon the soundest reasons and applies to criminal prosecutions as well as civil causes. (*Jones v. State*, 26 O. St., 208; *Sioux City & P. R. Co. v. Finlayson*, 16 Neb., 578; Thompson, Trials, 2339 *et seq.*)

12. Exception was taken also to the following instruction:

"No. 16. It being charged in the information that the deceased, Akeson, came to his death at the hands of the defendants Hill and Benwell while they, defendants, were engaged in the common purpose of committing a robbery upon the said deceased, you are instructed that, as a matter of law, robbery is the felonious taking of money, goods, or

other valuable things from the person of another by force or intimidation, and that under our statute the crime of robbery is a felony punishable by imprisonment in the penitentiary of the state; therefore, in this connection, you are further instructed that when an unlawful intentional killing of human being occurs or is committed by one or more persons while engaged in an attempt to rob the person so killed, that such killing would be murder in the first degree, and that all who are present, engaged in the common design of robbery, aiding and abetting therein, in furtherance of the common purpose of robbery, are equally guilty with the one who actually does the killing. You are therefore instructed in this case, if you believe from the evidence beyond any reasonable doubt that at the time of the alleged killing of Mattes Akeson, the defendant Harry Hill with John Benwell had entered his dwelling house, armed with a deadly weapon or weapons, for the purpose of intimidating the deceased for the furtherance of their purpose to steal, take, and carry away by force and violence the money or any article of personal property of the deceased's dwelling house, and that in the prosecution of that purpose and design the defendants, or either of them, shot the deceased and thereby caused his death, or that one of the defendants fired the fatal shot which caused the death of the deceased, and that the other defendant was there present, aiding, abetting, and assisting in the perpetration of the felony and in the commission of the act which caused the death of the deceased, then you are instructed, should you so find, that such killing would be murder in the first degree, for the law presumes when human life is taken under such circumstances, and in furtherance of the purpose to commit a robbery, that the person or persons committing such felony contemplate and intend such killing as a natural and probable result of their intent to rob."

There appears to have been an error or omission in the transcribing of the above instruction, wherein the court is

made to say that the accused might be convicted if he felo-
niously killed the deceased while engaged with his co-de-
fendant in attempting forcibly to take, steal, or carry away
" any article of personal property of the deceased's dwelling
house." But the objection to the instruction is upon other
grounds, viz., that it authorizes a conviction provided the
jury should find that the defendant forcibly entered the
house of the deceased for the purpose of committing a
larceny. Robbery at common law was defined as larceny
committed by violence from the person of one put in fear.
(2 Bishop, Criminal Law, 1156.) By section 13 of our
Criminal Code it is provided that "If any person shall
forcibly and by violence, or by putting in fear, take from
the person of another any money or personal property of
any value whatever with the intent to rob or steal, every
person so offending shall be deemed guilty of robbery, and
upon conviction thereof shall be imprisoned in the peni-
tentiary not more than fifteen nor less than three years."
The taking, according to each definition, must be from the
person, since the crime of robbery is an ·offense as well
against the person as against property. It is, however, not
essential to a conviction for the crime named that the
property be taken from the body of the person wronged.
It is sufficient if taken from his personal presence or per-
sonal protection. (2 Bishop, Criminal Law, 1177, 1178;
*United States v. Jones,* 3 Wash. C. C., 209; *Clements v.
State,* 84 Ga., 660; *State v. Calhoun,* 72 Ia., 432.) In the
last named case, which was under a statute similar to ours,
the prisoner was shown to have bound the prosecutrix and
by putting her in fear extorted information respecting the
place where her money and other personal property was
kept. Leaving her bound he went to the place designated
by her in another room of the same house and took the
property named in the indictment. In the opinion the
court, by Beck, J., uses this language : "The thought of the
statute, as expressed in the language, is that the property

must be so in the possession or under the control of the individual robbed that violence or putting in fear was the means used by the robber to take it." And in *Clements v. State* the prisoner, by threats of violence, detained the prosecutor in an outhouse while a confederate entered his dwelling fifteen paces distant and took therefrom the property described, and the taking was held to be in the presence of the prosecutor within the meaning of the statute defining robbery. The taking of the property of the deceased from his dwelling under the circumstances indicated by the instruction would have been robbery. It would also have sustained a conviction for larceny. (*Brown v. State*, 33 Neb., 354.) The objection to the instruction is, therefore, without merit.

13. Among the reasons alleged for a new trial is that the jury, after a final submission of the cause, were conducted to a hotel and given separate apartments during the night; but the evidence relied upon to support that assignment was not filed until after judgment on the verdict and after the final adjournment of the term. That allegation, if true, will not avail the accused in this proceeding.

14. It is claimed that the prosecuting attorney, during the closing argument, made use of inflammatory language while referring to the accused, and which was entirely unwarranted by the evidence. It is, however, affirmatively shown by the record that no objection was made at the time, nor was the attention of the court in any manner called to the alleged abuse of privilege. It has been repeatedly held that questions of like character will not be reviewed by this court unless objection is made and exception taken in the district court. (See *Bradshaw v. State*, 17 Neb., 147; *McLain v. State*, 18 Neb., 154.) But although it is not clear that the attorney for the state was in this instance guilty of an abuse of privilege, we are constrained to call attention to what is believed to be a misconception of the rule recognized by this court. The proposition that

exception to statements used in argument must be taken at the time, refers to appellate proceedings and has no application to trials before the district court.   It is the duty of the trial judge, with or without objection, to promptly interfere when counsel so far forget themselves as to attempt to mislead the jury or divert their minds from the issue before them.   The judge is not a mere umpire without interest in the proceedings before him, but, on the contrary, it is his right and his duty to protect the court by an enforcement of the rules essential to an orderly and impartial administration of the law.   As remarked in *Tucker v. Henniker,* 41 N. H., 317, "What a counsel does or says in the argument of a cause must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so;" and where counsel wantonly persist in attempting to influence the jury by reference to facts not in evidence, or appeals to prejudice, just or unjust, *de hors* record, the court should not hesitate, on motion, to set aside a verdict in his favor, unless fully satisfied of its correctness, although no objection may have been noted at the time of the offense.   Referring to this subject the supreme court of Georgia, in *Berry v. State,* 10 Ga., 511, use the following pertinent language: "It is usually better to trust to the discrimination of the jury as to what is and what is not in evidence than for the opposite counsel to move in the matter, for what practitioner has not regretted his untoward interference when the counsel thus interrupted resumes, 'Yes, gentlemen, I have touched a tender spot.   *   *   * You see where the shoe pinches.'"   But in this, as in all matters pertaining to the trial, a large discretion is conceded to the trial judge, hence the rule requiring an objection to the abuse of privilege or privileges by counsel in order that it may be available upon review by the appellate court.

14.   It is urged, finally, that the evidence is insufficient to warrant the extreme penalty, and that the judgment

38

should accordingly be modified by this court. We are, however, unable to so regard it in the light of the facts disclosed by the record, which, briefly stated, are as follows: Two days previous to the homicide the accused and his co-defendant met the son of the deceased in the town of Weeping Water and applied for work. The latter replied that he could furnish work for one but not for both of them, but finally consented to take both to his father's home, six miles and a half distant, where they were sheltered by the deceased until the next morning, when they were set to work husking corn. The morning following, the deceased, not wishing their services longer, paid and discharged them, saying he was going to haul hogs to market that day and would need his teams for that purpose. The defendants returned to Weeping Water, where they spent the day in the saloon drinking—probably to excess. In the evening of that day they left Weeping Water on foot, going direct to the house of deceased, where they arrived some time after dark. They first visited the stable and procured therefrom a pair of check lines, but for what purpose is a matter of inference only, as they were left at the door of the dwelling house. On entering the house, which they did immediately, and with handkerchiefs or masks of some description over their faces, the defendants commanded the deceased and his son to hold up their hands, when the latter both retreated to the kitchen followed by their assailants. About that time a scuffle ensued, during which the fatal shot was fired, but by which of the defendants does not clearly appear. It is further shown that the deceased's son and two hired men present at the time received pistol wounds at the hands of the defendants, and that deceased's wife was struck on the head with a chair by one of them; that the accused, with the other defendant, had deliberately planned to commit the crime of robbery is clear, and that they were guilty of murder in attempting

to execute their felonious purpose is established by the evidence beyond a doubt.    The judgment is therefore

AFFIRMED.

Date of execution of sentence March 1, 1895.