RAKES *v.* THE PEOPLE.

---

## Rakes v. The People.

CRIMINAL LAW: *Pleading.* An indictment for murder should contain a certain description of the crime which the defendant is accused of committing, and the facts constituting it.

——: *Dying declarations.* It is essential to the admissibility of dying declarations, and is a preliminary fact to be proved by the party offering them, that they were made under a sense of impending death; but it is not necessary that it should be stated at the time that they were so made.

——: ——. The state of the deceased's mind may be judged from the circumstances; but the length of time which elapses between the declaration and death furnishes no rule for the admission or rejection of the testimony.

——: *Exceptions to evidence.* The rule, that in a capital case the accused does not waive a right by not insisting upon it, entitles him to have proof which is prejudicial to his case, and is not legally admissible, withdrawn from the jury, although he does not object to it when offered. Mason, Ch. J.

This was an indictment for murder, found in the District Court for Cass County. It was in the following words : —

STATE OF NEBRASKA, COUNTY OF CASS, *ss.*

Of the November term of the District Court, within the second judicial district in and for Cass County, State of Nebraska, in the year of our Lord one thousand eight hundred and seventy, the grand jurors, chosen, selected, and sworn in and for the County of Cass, in the name and by the authority of the people of the State of Nebraska, upon their oaths present : That Tallant Rakes, late of the county aforesaid, on the twenty-eighth day of June, in the year of our Lord one thousand eight hundred and seventy, in the County of Cass, and

### Rakes *v.* The People.

State of Nebraska, aforesaid, in and upon one Sarah J. Powers, then and there being, unlawfully, wilfully, feloniously, and of his malice aforethought, did make an assault; and that the said Tallant Rakes a certain pistol, then and there charged with gunshot and one leaden bullet, which said pistol he, the said Tallant Rakes, in his right hand then and there had and held, then and there unlawfully, wilfully, feloniously, and of his malice aforethought, did discharge and shoot off, to, against, and upon the said Sarah J. Powers; and that he, the said Tallant Rakes, with the leaden bullet aforesaid, out of the pistol aforesaid, then and there by force of the gunpowder aforesaid, by the said Tallant Rakes discharged and shot off as aforesaid, then and there unlawfully, wilfully, feloniously, and of his malice aforethought, did strike, penetrate, and wound her, the said Sarah J. Powers, in and upon and through the body of her, the said Sarah J. Powers, thereby then and there giving to her, the said Sarah J. Powers, with the leaden bullet aforesaid, so as aforesaid discharged and shot out of the pistol aforesaid, by the said Tallant Rakes, in and upon and through the body of her, the said Sarah J. Powers, one mortal wound of the depth of eight inches, and of the breadth of one inch; of which said mortal wound she, the said Sarah J. Powers, then and there languished, and, languishing, did live for and during the period of ten hours, and of which said mortal wound she, the said Sarah J. Powers, on the day and year aforesaid, at the county aforesaid, died. So the grand jurors aforesaid, upon their oaths aforesaid, in the name and by the authority of the people of the State of Nebraska aforesaid, do say that the said Tallant Rakes, her, the said Sarah J. Powers, in the manner and by the means aforesaid, unlawfully, wilfully, feloniously, and of his malice aforethought, did kill and murder, contrary to the form of the statutes in such

Rakes *v.* The People.

case made and provided, against the peace and dignity of the people of the State of Nebraska.

J. C. Cowin, *District Attorney.*

It appeared in evidence that the deceased lived a short distance — some forty or fifty steps — from the residence of the prisoner, who was living with his father; that on the 28th of June, 1870, between nine and ten o'clock in the forenoon, the deceased was shot, and went to her house.

On the trial of the cause, Elizabeth Hardwick was sworn as a witness, and testified as follows : " It was about four years since I first knew the prisoner. Mrs. Sarah J. Powers was my mother. On the 28th of June last, I was at Mr. Bell's, visiting ; when prisoner came there, and said to me, ' Your mother is dying.' I said, ' What in the name of God is the matter ? ' He said, ' I don't know : I believe she has been shot.' I went immediately to my mother's, and found her lying on the bed, on the floor, in a bad condition. I think Mrs. Rakes is all the one that was there when I got to the house. I examined her, and found the wound. It had been dressed: a wet rag had been applied to the wound. Her clothes were on her yet. She knew where she had been shot. She talked as if she could not get well. I did not express to her that I thought she could not get well. As near as I can recollect, she said, in these exact words, ' O Lizzie ! I can't stand it, I suffer so.' I did state before a justice of the peace on preliminary examination, repeatedly, that my mother said she would recover ; but she did not say so immediately before she said, ' O Lizzie ! I can't stand it, I suffer so.' I got to the house between ten and eleven o'clock. My brother-in-law raised her up before noon ; but she could not sit up. I believe it was about eleven or twelve she used the words she

could not 'stand it.' In a short time she appeared more lively: and then, after that, in a short time, she could scarcely talk; and her tongue became stiff, so she could not talk. Again, about sundown, she said, 'O Lizzie! I can't stand it, I suffer so.' She told me where she was wounded shortly after I went there. She said who she thought shot her, about two o'clock; and very late in the evening she said so again. When defendant was after the doctor, mother said he would bring none: he did not want any." The defendant's counsel objected to the foregoing evidence, on the ground that no sufficient foundation had been laid to admit the same as dying declarations; which objection was overruled, and this ruling is now assigned for error. This witness further testified that it was not much past the middle of the afternoon when her mother expressed the belief she would recover; that prisoner returned from Plattsmouth, where he had been after a doctor, about three o'clock. No other evidence had at this time been offered tending to show what the deceased thought touching her recovery.

The jury rendered a verdict of guilty; and the defendant sued out this writ.

*T. M. Marquette* and *Maxwell & Chapman*, for plaintiff in error.

The Court erred in admitting the dying declaration of Sarah J. Powers.

Dying declarations are not admissible, unless it appear to the Court that they were made *under a sense of impending death.* 1 *Greenleaf Ev. (Redfield's Ed.)*, sect. 158; *R.* v. *Woodcock*, 1 *Leach*, 652; *R.* v. *Welbourn*, 1 *East P. C.*, 358; *Hill's Case*, 2 *Grattan*, 494; *Nelson* v. *State*, 7 *Humph.*, 542; *Moore* v. *State*, 12 *Ala.*, 764; *Brakefield* v.

RAKES v. THE PEOPLE.

*State*, 1 *Sneed*, 215; *Starkie* v. *People*, 17 *Ill.*, 17; *Robbins* v. *State*, 8 *O. S.*, *Rep.* 131; 3 *Geo.*, 433; *Kilpatrick* v. *Com.*, 7 *Casey*, 198.

2d, That the Court erred in overruling the motion for a new trial, the verdict being contrary to and against the weight of evidence.

A conviction clearly against the weight of evidence will be set aside. *Bedford* v. *State*, 5 *Humph.*, 553; *State* v. *Lyon*, 12 *Conn.*, 487; *State* v. *Bird*, 1 *Mo.*, 417, 585; *Bell's Case*, 8 *Leigh;* *Com.* v. *Madden*, 5 *Eick*, 429; *Copeland* v. *State*, 7 *Humph.*, 479; *State* v. *Tomlinson*, 11 *Iowa*, 402; *Hoagland* v. *Moore*, 2 *Blackf.*, 167; *People* v. *San Martin*, 2 *Cal.*, 484; *State* v. *Miner*, 10 *Minn.*, 313.

3d, The Court erred in overruling the motion for a new trial, there not being sufficient evidence to sustain the verdict.

When the evidence is not sufficient to warrant the verdict, a new trial will be granted in criminal cases, although it may not be such a case of rashness as would induce a like decision in civil cases. *Bedford* v. *State*, 5 *Humph.*, 532; *State* v. *Tomlinson*, 11 *Iowa*, 404; *Bayley* v. *Eaton*, 8 *Cal.*, 159; *Guilford* v. *State*, 24 *Geo.*, 315; 2 *Humph.*, 442.

To warrant a conviction in a criminal case, the evidence must exclude every other hypothesis but that of the defendant's guilt. 1 *Greenleaf Ev.* (*Redfield's Ed.*), sect. 34; *Tweedy* v. *State*, 5 *Clark*, 433; *Horn* v. *State*, 1 *Kansas*, 42; *People* v. *Strong*, 30 *Cal.*, 151; *Orr* v. *State*, 34 *Geo.*, 342; *State* v. *Collins*, 20 *Iowa*, 85; 3 *Greenleaf Ev.* (*Redfield's Ed.*), sect. 29; 5 *Clark* (*Iowa*), 436; *Sumner* v. *The State*, 5 *Blackf.*, 579; 2 *Hale*, *P. C.*, 29 *O.*

The evidence to prove an *alibi* need not outweigh the evidence which tends to disprove it. It is sufficient on this, as on other points in a criminal case, that it raises a reasonable doubt of the truth of the charge; and, if it

does, the prisoner must be acquitted. *French* v. *The State*, 12 *Ind.*, 670 ; *State* v. *Waterman*, 1 *Nev.*, 543.

*G. A. Roberts, Attorney-General*, for the people.

MASON, Ch. J., after reading the indictment and the evidence above recited, delivered the opinion of the Court as follows : —

I. It was urged, upon the motion to quash, that the place where the offence was committed was not clearly stated. The offence is charged to have been committed in the County of Cass, and State of Nebraska ; and the facts which constitute the offence are clearly and distinctly stated. The indictment charges Tallant Rakes with the murder of Sarah J. Powers, in the County of Cass, and State of Nebraska, on the twenty-eighth day of June, 1870. It states facts, which, if true, constitute the crime of murder. The county where the offence is charged to have been committed is clearly averred in the body of the indictment, and the allegation of time and place then and there is reported to every material fact which is issuable and triable. This is sufficient. See *The State* v. *Williams*, 21 *Indiana*, 234.

The indictment should contain a certain description of the crime which the defendant is accused of committing, and a statement of the facts by which it is constituted. This indictment states the facts of the crime charged with as much certainty and precision as the nature of the case will allow ; and this is all that is required. 5 *T. R.*, 586 ; 1 *Leach*, 249 ; 5 *T. R.*, 611, 623.

II. When it appears that the deceased, at the time of the declaration which is offered in evidence, had any expectation or hope of recovery, however slight it may have been, and though death actually ensued in an

RAKES *v.* THE PEOPLE.

hour afterwards, the declaration is inadmissible. Says *Greenleaf*, vol. i., sect. 158, "It is essential to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them in evidence, that they were made *under a sense of impending death;* but it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears, in any mode, that they were made under that *sanction*, whether it be expressly proved by the express language of the declarant, or be inferred from his evident danger, or the opinion of the medical or other attendants stated to him, or from his conduct or other circumstances of the case; all of which are resorted to to ascertain the state of the declarant's mind. The length of time that elapses between the declaration and the death of the declarant furnishes no rule for the admission or rejection of the evidence; though, in the absence of other evidence, it may serve as one of the exponents of the belief of the deceased that dissolution was or was not impending." It was incumbent on the State to lay a sufficient foundation for the admission of the declaration of the deceased, by showing that the deceased believed, at the time of the declarations which are offered in evidence, that her death was impending. This was not done.

In the middle of the afternoon she expressed a belief — not a hope, but a belief — that she would recover. Before this time, and while the prisoner was absent after a doctor, she said he, the prisoner, would bring none: he did not want any. It was clearly error to admit this declaration while she, the deceased, had strong hopes of recovery.

III. But it has been suggested that the objection to the admission of this evidence was not made in time.

The accused has a right to a legal and impartial trial;

and to insist that evidence, the tendency of which is to prejudice his case, and which is not legally admissible, shall be submitted to the jury for their consideration, because the objection was not made in time, is in violation of that principle of law, that the mere neglect to insist on a right, in a capital criminal case, is not a waiver of that right. But, in this case, there was not even a neglect to insist on the right; but the bill of exceptions recites the evidence which is objectionable,— the declarations of deceased,—and then proceeds: " The defendant's counsel objected to the testimony of witness as to deceased's dying declarations, upon the ground that no foundation had been laid for such testimony; which objection was overruled by the Court, and to which ruling defendant's counsel excepted." The bill of exception is very inartistically prepared. But the reasonable construction is, that the evidence was objected to at the time it was offered. I think, from the manner in which the facts are recited, that such was the case; but, whether it was or not, the result must be the same. In a capital case, the prisoner may, on motion for a new trial, bring before the Court, for review, any ruling which denies him a substantial legal right. See *The People* v. *Ah Fong*, 12 *California*, 348; *The People* v. *Beebe*, 6 *California*, 246; *The People* v. *Demmit*, 8 *California*, 423.

It is not necessary to examine the record further: this disposes of the case. The judgment is reversed, and a new trial granted.

CROUNSE, J.

The evidence introduced by the prosecution as dying declarations was brought in without a proper foundation having been laid: whether objection to its introduc-

RAKES *v.* THE PEOPLE.

tion was made in time strictly, is not clear. However, in a case of this kind, we will resolve any doubt in favor of the accused. The conviction of the defendant in the Court below resting wholly on circumstantial evidence, and the evidence thus improperly allowed being very important in the case, a new trial should be allowed.

Judgment reversed, and new trial ordered.