Collins v. State.

## EDWARD J. COLLINS v. STATE OF NEBRASKA.

46 37
51 350
53 677

FILED OCTOBER 1, 1895.   No. 7572.

1. **Criminal Law: WITNESSES: RE-EXAMINATION.** As a general rule the re-examination of a witness should be limited to the points arising out of the cross-examination; but whether this rule shall be strictly enforced or not seems to rest entirely in the discretion of the trial judge. (*Schlencker v. State*, 9 Neb., 241.)

2. ———: ———: ———. It is competent for a witness on his redirect examination to make clear or complete matters left obscure or incomplete by his answers on cross-examination:

3. ———: RULINGS ON EVIDENCE: OBJECTIONS: REVIEW. In reviewing the rulings of the trial court in receiving and rejecting evidence this court will confine its examination to the objections made at the trial. (*Hill v. State*, 42 Neb., 503.)

4. ———: EVIDENCE: DYING DECLARATIONS. Dying declarations, to be admissible, must be made under a sense of impending death; but it is unnecessary that the deceased should have stated at the time of making the same that he was about to die. It is sufficient if this state of mind appears from other testimony. (*Fitzgerald v. State*, 11 Neb., 577.)

5. ———— : ————: RES GESTÆ. The term "*res gestæ*" means things done in and about, and as a part of, the transaction out of which the litigation in hand grew and on which transaction said litigation is based.

6. ———— : ————: ————. The declaration of an injured person, who subsequently dies from such injury, as to the cause of his injury, though made out of the presence of the party accused of inflicting such injury, and made under such circumstances as not to be admissible as the dying declaration of the deceased, is, nevertheless, competent evidence as part of the *res gestæ*, provided the declaration was made so near the time of the infliction of the injury and under such circumstances as to raise the presumption that it is an unpremeditated explanation thereof.

7. ———— : ————: ————. Whether the declaration of a person, since deceased, is competent evidence, as being part of the *res gestæ* of some transaction occurring in the life of said deceased, in any case, must be determined from the facts and circumstances surrounding the case on trial.

8. Homicide: DYING DECLARATIONS: RES GESTÆ. One McPherson about midnight was wounded by a pistol shot, of which wound he died a few days afterwards. At the time of the shooting he and one Dale were stealing coal from a railroad yard. McPherson was found insensible, where shot, shortly afterwards, but soon thereafter regained consciousness. He was then removed to a hotel near by and his wound dressed. About two hours and a half after the shooting he stated to those in attendance upon him at the hotel that "Dale had shot him accidentally." It did not appear from any statements of McPherson, or other evidence, that when he made said declaration he was possessed of the conviction that he was mortally wounded and about to die. No inquiries were made of McPherson by those who found him in the railroad yard, while there, as to how he came to. be shot. McPherson made no statements while in the railroad yard as to who shot him. It was not made to appear that McPherson was unable to speak while in the yard after regaining consciousness and before being removed; nor was it made to appear that he lost consciousness or became unable to speak at any time after reaching the hotel and before the making of such declaration. On the trial of one Collins for the murder of McPherson the prisoner offered in evidence McPherson's declaration above quoted. *Held*, (1) that the declaration was not competent evidence as the dying declaration of McPherson; (2) that the declaration was not made so soon after the shooting and under such circumstances,—all the facts and cir-

cumstances of the case considered,—as to raise the presumption that the declaration was the unpremeditated explanation of the shooting, and that, therefore, it was incompetent evidence as part of the *res gestæ.*   .

ERROR to the district court for Douglas county.   Tried below before SCOTT, J.

*Joseph R. Clarkson,* for plaintiff in error.

*A. S. Churchill, Attorney General, George A. Day, Deputy Attorney General,* and *H. H. Baldrige,* for the state.

RAGAN, C.

For the shooting and killing of one Louis McPherson Edward J. Collins was convicted in the district court of Douglas county of the crime of murder in the second degree and sentenced to the state penitentiary for life.   Collins brings the judgment pronounced against him here for review, and seeks its reversal for alleged errors committed by the trial court.

1. On the trial the state called as a witness one Bennett, the sheriff, who amongst other things testified that after a conversation with one Dale he arrested the prisoner.   Bennett, on his cross-examination by counsel for Collins, testified as follows:

Q. After you heard Dale's story and after you had arrested Collins you felt suspicious, didn't you?

A. I did, for two reasons.

Q. You did feel suspicious of him?

A. Yes, sir.

Bennett, on his redirect examination by the state, was then asked: "What were your reasons?" [for being suspicious.]   This question counsel for Collins objected to.   The objection was overruled and the witness answered.   The · first reason was, Mr. Dale seemed to be very open in his remarks and he didn't care how he talked.   The other rea-

son was, Mr. Collins was very close-mouthed and very careful what he said. The ruling of the court in permitting this question to be answered is the first error assigned here by Collins. In *Schlencker v. State*, 9 Neb., 241, it was held: "As a general rule the re-examination of a witness should be limited to the points arising out of the cross-examination; but whether this rule shall be strictly enforced or not seems to rest entirely in the discretion of the presiding judge." Whether the evidence elicited from Bennett on his cross-examination was competent and would have been permitted, had objection thereto been made by the state, we do not decide; but it is clear that the redirect examination of Bennett was limited and directed solely to the facts of Bennett's suspicions at the time he made the arrest of Collins as brought out on his cross-examination. It is competent for a witness on his redirect examination to make clear or complete matters left obscure or incomplete by his answers on cross-examination. The court did not abuse its discretion in permitting the question to be answered, and it was proper and competent evidence tending to explain and make complete facts elicited from Bennett on his cross-examination which were left incomplete and obscure. The assignment is, therefore, overruled.

2. On his direct examination a witness for the state was asked: "What, if anything, did you hear defendant Ed Collins state previous to the shooting in this case about there being too much stealing done in and about Valley and he was going to put a stop to it?" The prisoner's counsel objected to this question as leading, and thereupon the trial court said: "You may repeat his language if you know. State what he said." The prisoner excepted and the witness answered. The ruling of the court in permitting this question to be answered is the second assignment of error urged here. It is to be observed that the only objection made to the question was that it was leading. The trial judge, in effect, sustained this objection and himself put to

the witness the question: "You may repeat his language if you know. State what he said." No objection was interposed to the question as actually put by the court and answered by the witness. "In reviewing the rulings of the trial court in receiving and rejecting evidence this court will confine its examination to the objections made at the trial." (*Hill v. State*, 42 Neb., 503.) For the reason that no objection was made in the court below to the question actually put to and answered by the witness, the assignment of error is overruled.

3. It appears from the record that the deceased was shot in a railroad yard in the town of Valley, somewhere near midnight of the 18th of November, 1893. Shortly afterwards he was found lying on the ground, where shot, in an unconscious state of mind, with a bullet hole in his head. About thirty minutes after he was found, and while he was still in the railroad yard, he regained consciousness and was soon afterwards removed to a hotel where he was washed and put to bed,—a man named Ball being in attendance upon him in the hotel. Ball was called as a witness for the prisoner and testified that McPherson, while in the railroad yard, made no statements as to how he happened to be shot. Counsel then asked Ball this question: "Did he [McPherson], while you were present at the hotel, after he had recovered so as to be able to talk, state the manner of his shooting?" This question the state objected to. The court sustained the objection and the prisoner excepted. The witness then testified that at no time while he was present with McPherson was anything said by him about the likelihood of his dying, or which indicated that he thought he was dying or fatally wounded.

4. The prisoner then made the following offer of proof under the question asked Ball and which the court refused to permit him to answer: "Defendant offers to prove by this witness that McPherson, the deceased, at the Reid Hotel, in the presence of the witness and others, stated, when

questioned regarding the manner in which he was shot, and
the person by whom, that his partner had shot him and
that he thought it was accidental and that he laid no blame
on him." This offer was objected to by the state and the
court said: "If you will show on the part of the defend-
ant that the deceased was laboring under the belief or con-
viction that he was going to die, you may introduce that
testimony." The prisoner made no such showing and the
court sustained the objection to the testimony offered, to
which the prisoner excepted. This ruling of the court is
the third assignment of error alleged here. In *Fitzgerald
v. State*, 11 Neb., 577, it is held: "Dying declarations, to be
admissible in evidence, must be made under a sense of im-
pending death; but it is unnecessary that the deceased should
have stated at the time of making the same that he was
about to die. It is sufficient if this state of mind appears
from other testimony." To the same effect see *Rakes v.
People*, 2 Neb., 157. The record before us does not disclose
by the statements of McPherson or other evidence that the
declaration offered in evidence was made by him while pos-
sessed of the conviction that he was mortally wounded and
about to die. It is clear then that the evidence was not com-
petent as being the dying declaration of the deceased. But
it is strenuously and ably insisted by the prisoner's counsel
that this evidence was a part of the *res gesta*, and as such
competent. This term *res gesta* means something done in
and about, and as a part of, the transaction out of which
the litigation in hand grew and on which transaction said
litigation is based. In this case the *res gesta* was the
shooting of McPherson. Was the declaration made by
him at the hotel as to who shot him so connected with the
shooting, and such an element thereof, as to come within
the legal definition of a part of that transaction?

The authorities are all agreed that the declaration of an
injured person, who subsequently dies from such injury, as
to the cause of his injury, though made out of the presence

of the party accused of inflicting such injury, and made under such circumstances as not to be admissible as the dying declaration of the deceased, is, nevertheless, competent evidence as part of the *res gesta*, provided the declaration was made so near the time of the infliction of the injury and under such circumstances as to raise the presumption of its being the unpremeditated explanation thereof. (See the rule stated and the authorities cited in 21 Am. & Eng. Ency. of Law, 102–111.)

"*Res gestæ* may be therefore defined as those circumstances which are the automatic and undesigned incidents of a particular litigated act and which are admissible when illustrative of such act. These incidents may be separated from the act by a lapse of time more or less appreciable. * * * Their sole distinguishing feature is that they must be the automatic and necessary incidents of the litigated act, necessary in this sense, that they are part of the immediate preparations for, or emanations of, such act and are not produced by the calculated policy of the actors." (1 Wharton, Law of Evidence [3d. ed.], sec. 259.)

In *State v. Garrand*, 5 Ore., 216, it was held: "To make declarations a part of the *res gestæ* they must be contemporaneous with the main fact; but in order to be contemporaneous they are not required to be precisely concurrent in time. If the declarations spring out of the transaction, if they elucidate it, if they are voluntary and spontaneous, and if they are made at the time so near to it as reasonably to preclude the idea of deliberate design, they are then to be regarded as contemporaneous."

If declarations of a past occurrence are made under such circumstances as will raise the reasonable presumption that they are the spontaneous utterances of thought created or springing out of the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation and design, they will be admissible as part of the *res gestæ*. (21 Am. & Eng. Ency. of Law, 102, and cases there cited.)

But how close in point of time to the infliction of an injury, and under what particular circumstances a declaration must be made by an injured person, as to the cause of the injury, to make such declaration a part of the *res gestæ*, the authorities are by no means harmonious.

In *Fulcher v. State*, 13 S. W. Rep. [Tex.], 750: "The deceased was shot in the neck and his articulation was affected by blood collecting in his throat. About fifteen minutes after he was shot, brandy and camphor were administered, and about fifteen minutes afterwards he was able to talk and made certain statements as to the circumstances of the shooting and who shot him, and it was held that the declaration was admissible as part of the *res gestæ*."

In *Lewis v. State*, 15 S. W. Rep. [Tex.], 642, a declaration made by the deceased about an hour and a half after the infliction of the wound from which she died, that defendant had come up behind her, pulled her backward, and cut her nearly in two, was held competent evidence as part of the *res gestæ*. It appeared that the woman was ignorant and had not spoken except in a scream after she was wounded, and it was therefore held that the declaration was apparently voluntary and spontaneous. To the same effect are *Castillo v. State*, 19 S. W. Rep. [Tex.], 892; *Moore v. State*, 20 S. W. Rep. [Tex.], 563; *Pool v. State*, 23 S. W. Rep. [Tex.], 891; *Pilcher v. State*, 25 S. W. Rep. [Tex.], 24.

In *Commonwealth v. Werntz*, 29 Atl. Rep. [Pa.], 272, it was held : "Declarations by the deceased to the police surgeon, who dressed his wounds after he had been carried across the street from where he was wounded and while his wounds were being dressed, as to who stabbed him are admissible as part of the *res gestæ*."

In *Travelers Ins. Co. v. Mosley*, 8 Wall. [U. S.], 397, the insurance company issued an accident policy to Mosley for $5,000, in favor of his wife. By the terms of the policy the company was not to be liable for any injury suffered

by Mosley which arose from a natural disease, and was not to be liable for his death from injury unless the injury produced his death within three months after the date of its occurrence. Mosley's wife sued the insurance company for the full amount of the policy, alleging that on the 21st of July, 1866, her husband accidentally fell down stairs and was thereby injured and died thereof within three months of that time. At the trial Mrs. Mosley testified that in the night (Wednesday) her husband got out of bed and went down-stairs. She did not know how long he was gone. When he came back he told her he had fallen down-stairs and almost killed himself; that he had hit the back of his head in falling; that he complained of his head and appeared faint and vomited. This conversation occurred on Wednesday night. She also testified that on Thursday morning her husband said he felt bad. The son of the deceased testified that about 12 o'clock on Wednesday night he saw his father lying with his head on the counter and asked him what was the matter and the father replied that he had fallen down-stairs and hurt himself. The son further testified that on Thursday his father said to him that he felt bad, and if he attempted to walk across the room his head became dizzy. These declarations of the widow and son of the deceased were objected to as incompetent. The objections were overruled. Mrs. Mosley had a verdict and judgment, and the insurance company assigned in the supreme court of the United States that the admission in evidence of these declarations was error, but that court held that the declarations were competent as part of the res gestæ.

*Missouri P. R. Co. v. Baier*, 37 Neb., 235, was an action by the administrator of Mrs. Baier against the railroad company for negligently causing her death. On the trial a witness testified that he was standing on the platform in front of the depot when the train pulled in; that the car was uncoupled and the train pulled out, and a few

minutes afterwards he heard a scream, and going to the place where he heard the outcry found Mrs. Baier lying on the platform with her legs cut off; that he picked her up and she then made certain statements to him as to the cause of the injury she had received. These declarations of the deceased were objected to at the trial as incompetent and the ruling of the trial court in admitting them was assigned as error in this court. The court decided the evidence was admissible as part of the *res gestæ*, holding that "A declaration to be a part of the *res gestæ* need not necessarily be coincident in point of time with the main fact proved. It is enough that the two are so clearly connected that the declaration can, in the ordinary course of affairs, be said to be a spontaneous explanation of the real cause."

*People v. Wong Ark*, 30 Pac. Rep. [Cal.], 1115, was a murder case. At the trial a police officer was permitted to testify that after the shooting he ran to the place where the deceased was lying on the porch, a distance of about 140 yards, and in a conversation with her—for possibly a half minute—the deceased then stated to the witness that the defendant was the man who had shot her. The court held that the declaration was a mere narrative of a past event made after the event was closed, and it was not admissible as part of the *res gestæ*.

*Armil v. Chicago, B. & Q. R. Co.* 30 N. W. Rep. [Ia.], 42, was an action by an administratrix against the railroad company to recover damages for negligently killing her husband, and the court held that the declarations of the deceased as to the cause of the injury he had sustained, which declarations he had made after he had returned home and more than thirty minutes after the accident, were not admissible as part of the *res gestæ*.

In *State v. Pomeroy*, 25 Kan., 349, one W. alleged that P. assaulted him, while alone in his house, with a musket with intent to kill and rob him. On the trial of P. a witness testified that within five minutes after the assault W.

stated to him that P. had assaulted him, W., with a musket and demanded his money. It was held that this declaration of W.'s was inadmissible, being no part of the *res gestœ.*

In *Estell v. State,* 17 Atl. Rep. [N. J.], 118, it was held: "In a case of homicide the narration of the transaction given by the injured man, a few minutes after the affair, and after the defendant had left, is not admissible in evidence as a part of the *res gestœ.*"

In *Crow v. State,* 21 S. W. Rep. [Tex.], 543, it was held: "On a trial for murder the exclusion was proper of defendant's statement of the difficulty to his mother, made half an hour after the homicide, and after driving home from the place of killing, such statement not constituting a part of the *res gestœ.*"

In *King v. State,* 5 So. Rep. [Miss.], 97, it was said: "It was not error for the court not to allow appellant to prove the declaration made by him after he was arrested, and but a little more than a minute after the shooting, as to the reason why he shot the deceased. Such declaration was not a part of anything then being done, but a mere statement in regard to a past transaction, and was therefore incompetent."

These are by no means all the cases, nor any very considerable part of the cases, in which has been considered the question whether a declaration offered or given in evidence was made at such time and under such circumstances as to be part of the *res gestœ;* but they serve to illustrate the futility of any attempt to lay down a rule on the subject which will be a safe guide in all cases. Whether the declarations of a person, since deceased, are competent evidence, as being part of the *res gestœ* of some transaction occurring in the life of said deceased, in any case, must therefore be determined from the peculiar facts and circumstances surrounding the case on trial and the basis of which case is the past transaction.

Adhering to the rule quoted above from Wharton, and the rule announced in *Missouri P. R. Co. v. Baier, supra,* we proceed to inquire whether the declaration offered in evidence in the case at bar is so closely and clearly connected with the shooting of McPherson that such declaration can in the ordinary course of human affairs be said to be a spontaneous explanation of such shooting. It is to be remembered that McPherson was first discovered wounded in a railroad yard and was unconscious; but it must also be borne in mind that he regained his consciousness before being removed from the yard into the hotel. The record shows that during the time he was in the yard he made no statements as to how or by whom he was shot, nor does the record disclose that those who found him and were with him after he had regained consciousness in the yard made any inquiry of him as to how he came to be shot; and it is a significant fact, not to be lost sight of in this connection, that the prisoner in his trial neither proved, nor attempted to prove, that the deceased, while in the railroad yard and after he had recovered his consciousness, was unable to speak. He was removed from the yard to one hotel where he remained a short space of time, and thence to another where he was put to bed. The record does not inform us whether the deceased became unconscious after he was removed from the railroad yard and we must, therefore, presume that he retained his consciousness from the time he regained it up to the time he made the declaration which is offered in evidence, a period of some two hours and a half; nor does the record show that the deceased, at any time after he was removed from the railroad yard to the time that he made the declaration, ever was unable to speak. Nothing is more natural or more probable than that the parties who first found McPherson, on his regaining consciousness and being able to speak, would have inquired of him as to how he came to be shot; and it is entirely reasonable and probable that McPherson, after he

regained his consciousness in the yard, if he was able to speak, even without an inquiry, would have told those about him how he came to be shot. We are therefore constrained to hold that the declaration offered in evidence was not made under such circumstances and so soon after the shooting, the facts and circumstances all considered, as to exclude the presumption that the declaration was the result of premeditation; or, to paraphrase the language of RYAN, C., in *Missouri P. R. Co. v. Baier, supra,* we cannot say that the declaration and the shooting were so clearly and closely connected that the latter, in the ordinary course of human affairs, must be regarded as a spontaneous explanation of the former. In other words, we cannot indulge the presumption that the declaration was the unpremeditated explanation of the shooting. (*Hewitt v. Eisenbart,* 36 Neb., 794, and cases cited.) The assignment is therefore overruled.

4. The next assignment of error is that the court erred in giving instruction No. 11, which is in the following language: "By the term 'reasonable doubt,' as herein used, is not meant a mere caprice, conjecture, or groundless possibility. It is an actual, substantial doubt based on a reason arising either from the evidence or want of evidence in the case, and sufficient to cause an ordinary prudent man to hesitate and refuse to act in the most important affairs and concerns of life. The guilt of an accused person is proven beyond a reasonable doubt when, upon the entire comparison and consideration of all the evidence, the minds of the jurors are in that condition that they can say from the evidence they have an abiding conviction to a moral certainty of the truth of the charge; but mathematical certainty is not required." · The criticism on this instruction is that the expression "but mathematical certainty is not required," was "calculated to impress the jury with the idea that anything short of mathematical certainty may properly be reasonable doubt." We think the instruction complained of would

8

have been better had the phrase quoted above been omitted therefrom, but we are unable to see that the jury was at all misled thereby, in view of the fact that in other instructions the degree of proof necessary to a conviction was specially and carefully commented on. The assignment is therefore overruled.

5. The fifth assignment of error is that the court erred in giving the twelfth instruction, which is in the following language: "The defendant contends that there is no evidence of any motive for the shooting of said deceased by said defendant; that they had never had any quarrel or ill-will one toward the other. But you are instructed that the question as to whether there was a motive for the defendant taking the life of the deceased, if he did take it, if that fact has been proven beyond reasonable doubt, is a question for you to determine under all the evidence in the case. If it has been proven beyond a reasonable doubt that defendant was accused of taking the life of said Louis McPherson, or of inflicting the wound that caused his death, if you find that fact has been proven beyond reasonable doubt, and that defendant stated that there had been too much stealing around there and he proposed to stop it, and any other facts that you find have been established beyond a reasonable doubt bearing upon that question, it would be for you to determine from all the evidence in the case whether the defendant had a motive for taking the life of said deceased, if he did take it, and whether that fact has been proved beyond a reasonable doubt, and you are further instructed that you should receive all evidence of verbal admissions of defendant with caution and closely scrutinize the same, as the repetition of verbal admissions or statements is more or less subject to imperfection and mistake; but if you find the defendant made an admission beyond a reasonable doubt under the evidence, and that such admission was deliberately made and precisely identified, the evidence it affords is to be considered by you the same as any other evidence

in the case, and you should give it such weight as you in your judgments think it fairly entitled to." The criticism on this instruction is thus stated by the prisoner's able counsel in his argument: " It most emphatically directs the jury to conversations had with Collins, and states that they supplied a motive, if otherwise evidence of motive was lacking." We think this criticism without merit.

6. Finally, it is insisted that the verdict is not sustained by sufficient evidence. We think it is. The testimony of the witness Dale was, that he and McPherson were engaged in stealing coal from some cars in a railroad yard on the night that McPherson was shot; that the prisoner came up near them, pointed a pistol in the face or at the head of McPherson and fired; that McPherson fell to the ground and he, Dale, ran away. Dale also identified the prisoner as the man who shot McPherson. He further stated that he had seen him prior to the shooting, had been in his company, was somewhat acquainted with him, and he recognized him after the shooting and pointed him out to the sheriff. It is on this evidence that the verdict assailed is predicated. Dale's credibility as a witness was for the jury, and if his story was true, the verdict does not lack evidence to support it. The judgment of the district court is

AFFIRMED.     .